**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Leonard George MAREE,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph BROOKS, Defendant–Appellant.**

Nos. 89–50188, 89–50239.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1991.

Decided May 22, 1991.

James D. Riddet, Santa Ana, Cal., for defendant-appellant Maree.

Hector Perez, Newport Beach, Cal., for defendant-appellant Brooks.

David A. Hoffer, Asst. U.S. Atty., Santa Ana, Cal., for plaintiff-appellee.

Before ALARCON, NORRIS and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Leonard George Maree appeals from the district court's imposition of sentence after his guilty plea to conspiracy to distribute cocaine. Maree contends that the district court violated Federal Rules of Criminal Procedure 11 and 32. Joseph Brooks appeals from the district court's order denying his motion for a new trial. Brooks was convicted of conspiracy to distribute cocaine. He contends that a juror's contact and discussion of the case with two friends warrants a new trial. This court has jurisdiction pursuant to 28 U.S.C. § 1291. With regards to appellant Maree, we affirm the judgment of the district court. With regards to appellant Brooks, we reverse the judgment of the district court and remand for a new trial.

## BACKGROUND

*Appellant Maree*

On September 27, 1988, appellant Leonard Maree was indicted by a federal grand jury in Los Angeles for conspiracy to dis-tribute cocaine in violation of 21 U.S.C. § 846. Maree entered a guilty plea on November 22, 1988. At the plea hearing, the district court judge asked Maree if he understood the maximum consequences of a guilty plea.[1] Maree responded that his attorney had explained to him that the penalty "could possibly be ... up to twenty years in prison ... and [a fine] up to ... a million dollars."

The presentence report established a range of 97 to 121 months' imprisonment. The court departed downward from the guideline range and sentenced Maree to 72 months' imprisonment. At the sentencing hearing, the court asked the defense counsel, "You have reviewed this presentence report ... completely with Mr. Maree; is that correct?" Defense counsel replied, "Yes, your honor, we did." The judge then asked the appellant for his comments. Maree spoke at length, never contradicting his counsel's assertion that Maree had reviewed the presentence report.

*Appellant Brooks*

On November 29, 1988, appellant Joseph Brooks was found guilty by a jury of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. On January 20, 1989, Brooks filed a motion for judgment of acquittal, or alternatively, a motion for new trial. In a supplement to that motion, Brooks alleged misconduct on the part of one juror, Donna Kuczek. The district court denied Brooks' motion on April 10, 1989, and sentenced him to 63 months in prison.

Juror Kuczek prepared two declarations stating that she had discussed Brooks' case with two friends during the course of Brooks' trial. Kuczek related all trial evidence to her friends and they recommended that Kuczek find Brooks guilty.[2] The dis-

---

1. The judge inquired:
   I am satisfied, first, that you clearly do understand the nature of the charge against you. I need to know what you've been told are the maximum consequences that you face by way of your conviction, in other words, how much possible time in custody along with possible fines?

2. Kuczek's December 30, 1988, declaration reads in pertinent part:

   I, Donna Kuczek, declare as follows:
   1. I served as a juror in the case of *United States v. Brooks*, SA CR 88–068–AHS.

   5. I met with Mr. Perez [Brooks' attorney] ... and told him I wanted to correct a horrible wrong. I advised Mr. Perez, and I so advise (sic) the Court, that during the Thanksgiving recess after the criminal case was tried but before deliberations commenced, I went

trict court held that Kuczek could not testify about the subjective effect of any extraneous information under Fed.R.Evid. 606(b), but that her factual testimony regarding her conversations with her friends was admissible. Based on the admissible testimony, the court found that Brooks "did not suffer any actual prejudice as a result of [Kuczek's] extraneous contact...." It therefore denied Brooks' motion for a new trial.

## DISCUSSION

*Appellant Maree*

### A

█ Appellant Maree contends that the district court failed to meet its burden under Fed.R.Crim.P. 32(a)(1)(A).[3] Specifically, Maree argues that the judge was required directly to ask him if he had reviewed the presentence report and if it was accurate. The legal requirements of Rule 32 are reviewed de novo. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (legal questions reviewed de novo), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

This issue is controlled by *United States v. Lewis*, 880 F.2d 243 (9th Cir.1989), in which this court held that Rule 32(a)(1)(A) "does not require the court to address a defendant directly concerning his knowledge of the presentence report." *Id.* at 245. Although the Rule places an affirmative duty on the sentencing court to "en-

---

to Frasier Park in Kern County with some of my friends and told them about the criminal case on which I sat as a juror. I told them that the case was a drug conspiracy. I also told them about the testimony of the witnesses.

6. My friends Crystal Schiffman and Patricia Hicks, whom I have known for about six years, told me that the defendant was guilty because he was there at the scene of the crime. They also told me that there were so many drug crimes occurring that it was my duty to bring it to a halt. My friends told me that I had an opportunity to get somebody off the street, and that I should do so. I was, in effect, told that it was my duty to make sure that people like Mr. Brooks were kept off the streets.

7. The horrible injustice I feel I did was that at the end of deliberations when I was the lone vote for not guilty, I remembered and took into account what my friends had told me and changed my vote to guilty. I voted to find Mr. Brooks guilty not on the basis of the evidence but on the basis of what my friends had told me when we were in Frasier park.

Kuczek's February 1989 declaration reads in pertinent part:

1. I was a juror in the case involving Joseph Brooks.

2. I spent the weekend before the jury began deliberations with two friends, Crystal Schiffman and Patricia Hicks, at Frasier Park. During the course of the weekend, I discussed all of the evidence I could remember from the trial with my two friends. I told my friends about the video and audio tapes that I had seen and heard. I also told my friends that Mr. Kozodoy testified that Joseph bragged about dealing drugs before and that Joseph was in ... Mr. Kozodoy's office when the money for the drugs was shown to Mr. Kozodoy. In addition, I told my friends that I did

not think that the government had proved its case beyond a reasonable doubt.

3. After I discussed all of the evidence I could remember with my friends, they both gave me their opinion that this person should not be on the streets. However, I did not feel as though either Patricia Hicks or Crystal Schiffman was trying to pressure me to vote for a guilty verdict, nor did I feel any pressure from them to vote for a guilty verdict. Even after speaking to these friends, I still believed that the government had not proved its case against Joseph beyond a reasonable doubt.

4. After the jury began to deliberate, I voted not guilty on the first ballot. We then discussed the evidence and played the video tapes and voted again. The vote on the second ballot was 11 to 1; I was the only one voting not guilty. When we discussed the evidence again after the second ballot, I felt that if eleven people felt that he was guilty and my friends thought that he was guilty, then perhaps I was wrong. I am an indecisive person; the feeling that there were eleven pairs of eyes staring at me, and the memory of what my friends said, made me change my vote to guilty.

5. After I changed my vote, I felt such remorse for Joseph I could not even look at him when I came back to court. When I was asked if I voted guilty, I felt as though I'd let Joseph down.

. . . . .

3. Rule 32(a)(1) reads in pertinent part:

Before imposing sentence, the court shall also—

(A) determine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report made available pursuant to subdivision (c)(3)(A) or summary thereof made available pursuant to subdivision (c)(3)(B); ...

sure that [the] defendant and his counsel have read the presentence report and have discussed it before sentencing," that duty is met "when the sentencing judge reasonably relies on evidence indicating that a defendant has read the presentence report and discussed it with counsel." *Id.* at 245–46. In *Lewis,* "the requirements of [Rule] 32(a)(1)(A) were fulfilled when [the appellant's] attorney told the sentencing judge that appellant had read the presentence report and [when the appellant] failed to dispute this assertion." *Id.* at 245–46.

In the instant case, the sentencing judge directly asked Maree's attorney if he had reviewed the report with his client. The attorney answered affirmatively. Maree, during his comments to the court, never indicated that he disagreed with his attorney or that the report was not understood. Therefore, under *Lewis,* the district court in the instant case clearly met its Rule 32(a)(1)(A) burden.

■ Maree further contends that the district court erred by not asking him if the presentence report was accurate. However, there is nothing in Rule 32 which requires the district court to so inquire of a defendant. *See United States v. Aleman,* 832 F.2d 142, 144 (11th Cir.1987) ("There is no requirement in ... Rule [32] that the district court pose a direct and specific question to defendant concerning the presence of factual misinformation in the [presentence report]."). It is sufficient that the defendant and his attorney have ample opportunity to alert the court of any presentence report inaccuracies. In the instant case, such opportunity clearly existed.

### B

Maree claims that the district court did not satisfy the requirements of Fed.R. Crim.P. 11(c)(1).[4] Questions regarding the legal requirements of Rule 11(c) are reviewed de novo. *See McConney,* 728 F.2d at 1201.

■ Maree first contends that the district court was required to advise him that it was obligated to consider the applicable sentencing guidelines. The current form of Rule 11(c)(1) does indeed require that the district court inform a defendant entering a plea of the sentencing guidelines' applicability. However, as the Government indicates, this requirement became an effective part of Rule 11(c)(1) on December 1, 1989. Because Maree's change of plea hearing occurred in 1988, the current version of the Rule did not control the district court in the instant case. The 1988 version of Rule 11(c)(1) did *not* require the district court to discuss the guidelines, and therefore the district court did not err.

■ Maree second contends that the district court was required to inform him of the minimum sentence required under the sentencing guidelines. Rule 11(c)(1) requires the sentencing court to "inform the defendant of ... the mandatory minimum penalty provided by law." The Rule does not, however, require the court to discuss the minimum *guideline* sentence. In a practical sense, it would be impossible for a court to inform a defendant of the minimum sentence available under the Guidelines. The presentence report, which is not prepared prior to the entrance of a guilty plea, is essential to the court's formulation of the relevant sentencing factors.

Rule 11 only requires the mention of a *minimum sentence,* not the minimum *guideline* sentence. The minimum sentence referred to in the rule refers to the statutory minimum. At the time Maree committed his crime, September 13, 1988, there was no minimum sentence applicable

---

**4.** Rule 11(c)(1) currently reads:

Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; ...

to the crime.[5] Therefore, Maree's argument fails, as the district court completely met its Rule 11 burden.

## Appellant Brooks

■ Appellant Brooks contends that the district court erred in denying his motion for a new trial. He argues that the court failed properly to consider a juror's declarations that two friends, with whom the juror had discussed the case, had an influence on her decision to vote for his Brooks' conviction. A district court's denial of a motion for a new trial is reviewed for an abuse of discretion. *United States v. Endicott*, 869 F.2d 452, 457 (9th Cir.1989).

■ The threshold issue to be determined is the admissibility of juror Kuczek's declarations. This issue is controlled by Fed.R.Evid. 606(b) which reads in pertinent part:

> [A] juror may not testify as to ... the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict ... or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

Rule 606(b) establishes a clear distinction between admissible testimony regarding extraneous outside influences and information, and inadmissible testimony regarding the subjective effects of such influences and information. *See United States v. Bagnariol*, 665 F.2d 877, 884–85 (9th Cir.), *cert. denied*, 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982); *Abatino v. United States*, 750 F.2d 1442, 1446 (9th Cir.1985); *Dickson v. Sullivan*, 849 F.2d 403, 406 (9th Cir.1988).

■ Kuczek's declarations, while somewhat conflicting, contain both types of testimony. She discloses the discussions with her two friends and their response to the case. This is admissible evidence under Rule 606(b) because it factually explains the outside influence and information presented to Kuczek. However, the declarations also contain testimony regarding the subjective effect of the outside influence on Kuczek's voting. Kuczek testified that her friends' comments influenced her to change her vote from not-guilty to guilty. This portion of the declarations is inadmissible under Rule 606(b). In this regard, the district court correctly applied Rule 606(b). In determining whether Kuczek's misconduct warrants a new trial, our inquiry is limited to the admissible portions of the declarations.

■ We must first determine which legal standard to apply to the extraneous influence inflicted on Kuczek. There are two different standards applicable to juror misconduct. Where *extraneous material* is submitted to the jury, the defendant will receive a new trial if the court finds a "reasonable possibility" that the material could have affected the verdict. *United States v. Madrid*, 842 F.2d 1090, 1093–94 (9th Cir.), *cert. denied* 488 U.S. 912, 109 S.Ct. 269, 102 L.Ed.2d 256, 257 (1988). Where *ex parte contacts* are involved, the defendant will receive a new trial only if the court finds "actual prejudice" to the defendant. *Id.* at 1093. The heightened standard applies to ex parte contacts when, as compared to extraneous information, they do not pertain to "any fact in controversy or any law applicable to the case." *Id.* (quoting *Rushen v. Spain*, 464 U.S. 114, 121, 104 S.Ct. 453, 457, 78 L.Ed.2d 267 (1983)).

■ The critical distinction in the instant case is whether Kuczek's communication with her friends constitutes extrane-

---

**5.** At the time of Maree's arrest, 21 U.S.C. § 846 read, "Any person who attempts or conspires to commit any offense defined in this title is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense...." The section made no mention of a minimum penalty. The current version of § 846 substituted "shall be subject to the same penalties" for "is punishable by ... maximum punishment." Therefore, under this version of § 846, a minimum sentence is applicable where the underlying crime has a minimum sentence.

ous information or ex parte contact. Although not an easy distinction to draw in this case, we find that Kuczek was confronted with only ex parte contact and not extraneous information. Cases utilizing the "reasonable possibility" standard involve additional information being presented to a jury. For example, in *Dickson*, 849 F.2d at 405, a sheriff escorting jurors to and from the court room told the jurors that the defendant had "done something like this before." The jurors therefore learned of a prior act which probably would have been excluded from evidence by the court if offered by the prosecution. *Id.* at 408 (court noting prejudicial effect of evidence). Similarly, in *United States v. Littlefield*, 752 F.2d 1429, 1432 (9th Cir.1985) (government required to show lack of prejudice beyond a reasonable doubt), a juror brought a magazine into the jury room which contained an article about tax fraud schemes similar to the charges against the defendants. Again, the jury was subjected to additional information applicable to the facts of the case. *See also United States v. Vasquez*, 597 F.2d 192 (9th Cir.1979) (bailiff left official court files in the jury room, exposing the jury to evidence previously ruled inadmissible by the court); *Marino v. Vasquez*, 812 F.2d 499, 505 (9th Cir.1987) (juror engaging in experiment, a recreation of the crime, with a third party).

Cases in which the actual prejudice standard was applied involved improper contact, but not the introduction of new information. *See Rushen*, 464 U.S. at 116, 104 S.Ct. at 454 (juror speaking twice to the trial judge about her acquaintance with the murder victim of a defense witness; the judge reassured the juror without introducing new evidence); *Madrid*, 842 F.2d at 1091 (court clerk calming a juror who had been sworn at by another juror); *United States v. Endicott*, 869 F.2d at 457 (juror approaches main defense witness and says that he knows defendant is guilty).

In the instant case, Kuczek did have more than casual contact with her friends during the trial. Indeed, she discussed the trial evidence and her personal reservations concerning the appellant's guilt. Her friends actively discussed the case and dis-

closed their opinions about the proper outcome. However, other than their personal opinions, Kuczek's friends added no *information* about the defendant or the case. Their knowledge was limited to the evidence disclosed by Kuczek. Given these facts, we hold that Kuczek was subjected to only ex parte contact and not extraneous information. Therefore, the actual prejudice standard applies.

■ The district court determined that Brooks did not suffer actual prejudice from Kuczek's ex parte contact. We review alleged juror misconduct independently, in the context of the entire record. *Madrid*, 842 F.2d at 1092. In this case, despite the fact that we accord "substantial weight" to the trial court's conclusion as to the misconduct's effect, *id.*, *Bagnariol*, 665 F.2d at 885, we disagree with the district court's determination. Kuczek was presented with strong opinions concerning the proper outcome of Brooks' case. Her friends commented openly about their perception of the drug problem and suggested that people like Brooks should be incarcerated. Given the aggressive manner in which the friends confronted Kuczek with this information, we find that Brooks suffered actual prejudice. However, we are careful to limit our holding to the specific facts of this case. We anticipate that not every incident of a juror's ex parte contact with friends or relatives would constitute actual prejudice to a defendant.

Because we hold that Brooks suffered actual prejudice, we find that the district court abused its discretion in denying his motion for a new trial. The case is remanded with instructions to the district court to grant Brooks' motion.

## CONCLUSION

With regards to appellant Maree, we affirm the judgment of the district court. The district court did not violate Federal Rules of Criminal Procedure 11 and 32. With regards to appellant Brooks, we reverse the district court's denial of Brooks' motion for a new trial and remand for entry of an order granting Brooks a new

trial. Brooks suffered actual prejudice as a result of juror misconduct.