24 F.3d 250
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Louis GOMEZ-GOMEZ, Defendant-Appellant.
 No. 93-10150.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 7, 1994.
Decided May 4, 1994.
 
 Before: Poole, Beezer and T.G. Nelson, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Louis Gomez-Gomez ("Gomez") challenges his conviction for knowing and intentional possession of at least five kilograms of cocaine, with the intent to distribute. He appeals the denial of his pretrial motion to suppress the fruits of the search of a vehicle, arguing that there was not probable cause for a warrantless search and no consent to the search, and that the search exceeded the extent of any consent given. He also appeals the denial of his post-verdict motion for a new trial based on the introduction of extrinsic evidence into the jury deliberations. Finally, he argues that his conviction was based on insufficient evidence.
 
 
 3
 We have jurisdiction over the district court's final judgment pursuant to 28 U.S.C. Sec. 1291, and for the reasons below, we affirm.
 
 I.
 
 4
 Motions to suppress are reviewed de novo. United States v. Homick, 964 F.2d 899, 903 (9th Cir.1992). The trial court's factual findings are reviewed for clear error. United States v. Negrete-Gonzales, 966 F.2d 1277, 1282 (9th Cir.1992). Mixed questions of fact and law regarding evidence obtained from a warrantless search are reviewed de novo, "although the clearly erroneous standard applies if the necessary analysis is predominantly factual in nature." United States v. Litteral, 910 F.2d 547, 553 (9th Cir.1990) (quoting United States v. Thomas, 863 F.2d 622, 625 (9th Cir.1988)).
 
 
 5
 The district court held an evidentiary hearing on the motion to suppress, brought by both Gomez and his co-defendant Juan Buitrago. Unquestionably, the interaction between the officer who conducted the contested search, Stanhope, and Gomez began without constitutional violation. Both parties agree that Stanhope had the right to question the men about the accident. The defendant argues that at some point, the interaction between Stanhope and the defendants crossed the line into constitutionally impermissible territory.
 
 
 6
 "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." Florida v. Jimeno, 500 U.S. 248, ----, 111 S.Ct. 1801, 1803 (1991) (citing Illinois v. Rodriguez, 497 U.S. 177 (1990)). Consensual searches thus do not violate the Fourth Amendment because "it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." Id. (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).
 
 
 7
 A seizure occurs when a person reasonably believes they are not free to go, which belief must be inferred from the totality of the circumstances. Morgan v. Woessner, 997 F.2d 1244, 1253 (9th Cir.1993), cert. dismissed, sub nom., Searle v. Morgen, 114 S.Ct. 671 (1994). There is no bright line rule that the police inform the questionee that he or she has the right to refuse consent, and the state need not prove that the defendant had a subjective understanding of the right to refuse. Schneckloth, 412 U.S. at 232-33. As a general rule, police may approach individuals in public places and request to search objects in their possession. See Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382 (1991) (request to search luggage of passengers on public buses); Florida v. Rodriguez, 469 U.S. 1 (1984) (request to search luggage of person in airport terminal). The Fourth Amendment is not necessarily offended if an officer asks an individual who has been stopped for a routine traffic infraction if he can search the car for narcotics. See Jimeno, 111 S.Ct. at 1803-4 (after stopping car for failing to stop at red light, requested permission to search for drugs after informing driver he had right to refuse).
 
 
 8
 The disputed portion of the interaction began when Stanhope had admittedly finished his traffic investigation, and by his own admission, had no reason to detain the men. Before leaving them to drive off, he asked about alcohol, drugs, and weapons. The question itself was not impermissible. See id. However, Stanhope and Buitrago gave very different accounts of the conversation after that point.
 
 
 9
 They both agreed that Stanhope requested permission to look in the van. Stanhope testified that Buitrago gave permission, and Buitrago testified that he refused permission. The choice between their stories determines the legality of the search. If Stanhope had the driver's permission to search, he was not acting in violation of the Fourth Amendment. Thus the motion came down to a pure question of fact, which this court reviews under the clearly erroneous standard.
 
 
 10
 The evaluation of testimony, and the credibility of the witnesses, are functions of the district court. Both Buitrago and Stanhope testified at the evidentiary hearing, and the district court found Stanhope's testimony more credible. There is basis in the record for this conclusion, and no basis to allow this court to describe the finding as clearly erroneous. Although Buitrago's grasp of English was questionable, he responded appropriately to questions. Even he does not claim that he misunderstood Stanhope's question. It is also true that Buitrago later refused to sign a written consent form, after Stanhope had uncovered the hidden compartment. This refusal also does not make the conclusion that he earlier gave oral consent clearly erroneous. Because the district court's finding that Buitrago gave permission to search is not clearly erroneous, we affirm the denial of the motion to suppress for lack of consent.
 
 II.
 
 11
 This court reviews a denial of a motion for a new trial for abuse of discretion. United States v. Maree, 934 F.2d 196, 201 (9th Cir.1991).
 
 
 12
 The admissibility of juror testimony to attack a verdict is controlled by Federal Rule of Evidence 606(b):
 
 
 13
 [A] juror may not testify as to ... the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict ... or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.
 
 
 14
 "Rule 606(b) establishes a clear distinction between admissible testimony regarding extraneous outside influences and information, and inadmissible testimony regarding the subjective effects of such influences and information." Maree, 934 F.2d at 201.
 
 
 15
 If the jury "obtains or uses evidence that has not been introduced into the trial record ... an appellant is entitled to a new trial 'if there existed a reasonable possibility that the extrinsic material could have affected the verdict.' " Marino v. Vasquez, 812 F.2d 499, 504 (9th Cir.1987) (emphasis original) (quoting United States v. Vasquez, 597 F.2d 192, 193 (9th Cir.1979).[1] "In conducting their deliberations, '[j]urors have a duty to consider only the evidence which is presented to them in open court.' " United States v. Navarro-Garcia, 926 F.2d 818, 821 (9th Cir.1991) (quoting Bayramoglu v. Estelle, 806 F.2d 880, 887 (9th Cir.1986)). The effect of such information is serious. "When a jury is exposed to facts that have not been introduced into evidence, a defendant has effectively lost the rights of confrontation, cross-examination, and the assistance of counsel with regard to the extraneous information." Dickson v. Sullivan, 849 F.2d 403, 406 (9th Cir.1988). Simple reference to a dictionary by a juror may constitute reversible error. United States v. Kupau, 781 F.2d 740, 744, cert. denied, 497 U.S. 823 (1986) (consulting dictionary was error, but harmless); Gibson v. Clanon, 633 F.2d 851, 853-55 (9th Cir.1980), cert. denied, 450 U.S. 1035 (1981) (consultation of two encyclopedias by two jurors is reversible error, necessitating writ of habeas corpus).
 
 
 16
 Gomez seeks a new trial based on the jury's use of a magnifying glass to examine the fingerprints on the tape used to wrap the packages of drugs. The use of a magnifying glass is not the same as consulting a dictionary. The magnifying glass itself is clearly not extrinsic evidence. See United States v. Brewer, 783 F.2d 841, 843 (9th Cir.), cert. denied, 479 U.S. 831 (1986). Gomez argues that the jury's discovery that the fingerprint overlapped two pieces of tape is the extrinsic evidence. Although the expert testified at trial that she could not determine when the print was placed on the tape, the jurors allegedly concluded that it must have been made after the package was wrapped. However, this court in Brewer stated that there was no meaningful distinction between viewing photographs through a magnifying glass and viewing them with through corrective lenses. Id. (approving the jury's use of a magnifying glass to view a photograph). Whether the jury examined duly admitted evidence with their naked eyes, through spectacles, or through a magnifying glass is immaterial. What they saw was not extraneous evidence.
 
 
 17
 While this court has held that "[t]he trial court, upon learning of a possible incident of juror misconduct, must hold an evidentiary hearing to determine the precise nature of the extraneous information," ( United States v. Bagnariol, 665 F.2d 877, 885 (9th Cir.1981), cert. denied, 456 U.S. 962 (1982)) the information before the district court in the form of an affidavit of Gomez's lawyer, detailing his conversation with a juror, did not reach the level of a "possible incident of juror misconduct." If "the court is able to determine without a hearing that the allegations are without credibility or that the allegations if true would not warrant a new trial," an evidentiary hearing is not necessary. Navarro-Garcia, 926 F.2d at 822. Because the use of the magnifying glass in the manner alleged would not warrant a new trial if true, the district court did not abuse its discretion in failing to hold a hearing, nor did it err in denying the motion for a new trial.
 
 III.
 
 18
 Gomez finally argues that the presence of his fingerprint alone is not sufficient evidence of constructive possession of cocaine to support his conviction. We need not decide this narrow question, however, for Gomez' fingerprint was not the only evidence upon which the jury could rely in finding him guilty. He was a passenger in the van while the cocaine was in the van. In fact, he was more than a passenger. He and Buitrago had been sleeping in the van, and Gomez had personal belongings in the van which was serving as his "home on the road." There was testimony that a portion of a newspaper was found in the compartment with the drugs. Additional portions of the paper were in the glove compartment, and there was testimony that Gomez bought the paper. While Gomez questions the strength of the evidence against him, there was sufficient evidence before the jury to support his conviction of possession.
 
 IV.
 
 19
 Because the district court's finding that Buitrago consented to the search of the van is not clearly erroneous, because there were no allegations of extraneous evidence to support a new trial, and because there was sufficient evidence to convict Gomez, we AFFIRM the district court.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 A new trial is not necessary if the government can prove beyond a reasonable doubt that the jury's exposure to extrinsic evidence was harmless. United States v. Littlefield, 752 F.2d 1429, 1431 (9th Cir.1985)