**UNITED STATES of America**

v.

**Andre HORNE, Appellant.**

**No. 90–3175.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 10, 1992.

Decided March 19, 1993.

Reita Pendry, Asst. Federal Public Defender, with whom A.J. Kramer, Federal Public Defender (both appointed by this court) was on the brief, for appellant.

Thomas R. Eldridge, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., were on the brief, for appellee.

Before BUCKLEY, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge D.H. GINSBURG.

Separate opinion for the court filed by Circuit Judge BUCKLEY.

Concurring opinion filed by Circuit Judge BUCKLEY.

D.H. GINSBURG, Circuit Judge:

Andre Horne appeals from the decision of the district court denying his presentence motion to withdraw his guilty plea because his lawyer substantially underestimated the sentence he would receive. We hold that the appellant was not deprived of effective assistance of counsel under the Sixth Amendment of the United States Constitution and that the district court did not abuse its discretion in denying his motion to withdraw his guilty plea. We therefore affirm the judgment of the district court.

## I. BACKGROUND

Horne was indicted on three counts in October 1989. He was charged with possession with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B)(iii); possession of a firearm in connection with a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and possession of a firearm by one previously convicted of a felony, in violation of 18 U.S.C. § 922(g).

Pursuant to an agreement with the prosecution, the appellant pled guilty to the first and third counts, and the second count would later be dismissed. Before accepting his plea, the district court, per FED. R.CRIM.P. 11, told Horne that he faced a maximum penalty of fifty years' imprisonment and a $2,010,000 fine. The judge also warned him that the range of sentences he could receive under the Sentencing Guidelines could not be determined prior to the preparation of the presentence report and that the court could "impose a sentence that could be more severe or less severe than the sentence called for by the guidelines." Horne twice affirmed that he had received no promise—other than the dismissal of the second count—to induce his guilty plea, and his counsel indicated that there had been "no specific sentence recommended at all by either side in this case."

At a status hearing in May, Horne's counsel moved to withdraw the plea, pursuant to FED.R.CRIM.P. 32(d), based upon a claim of ineffective assistance of counsel. It seems that prior to Horne's pleading guilty, his counsel had erroneously estimated that the applicable Sentencing Guidelines range for the first and third counts would be 63 to 78 months. This estimate was based upon counsel's impression—an impression shared by the prosecutor—that Horne had but one prior felony drug conviction and one prior misdemeanor drug conviction. Both the defense counsel and the prosecutor had surmised prior to receiving the presentence report that Horne's prior conviction for possession with intent to distribute marijuana was only a misdemeanor in the State of Maryland, as it would be in the District of Columbia; in fact, however, possession of marijuana with intent to distribute is a felony in Maryland. With two prior felony convictions, Horne was classified under the Guidelines as a "career criminal", see U.S.S.G. § 4B1.1, and was thus subject to a much higher sentencing range, viz. 262 to 327 months.

After a hearing the district court denied Horne's motion to withdraw his guilty plea. Noting that Horne neither asserted his innocence nor offered any defense going to the merits of the charges to which he had pled guilty, and that he had been informed of the maximum possible penalty provided by law, as required by Rule 11, the court held that the appellant could not withdraw his guilty plea.

## II. ANALYSIS

Horne offers two grounds for reversal of the district court decision to deny his motion to withdraw his guilty plea: (1) that the mistaken advice of counsel constituted ineffective assistance of counsel under the Sixth Amendment, and (2) that the district court abused its discretion in denying his motion because the appellant's misapprehension of the consequence of the plea provides a "fair and just reason" for allowing him to withdraw it pursuant to Rule 32(d). We hold that because the appellant

has failed to show that, but for counsel's errors, he would have pleaded not guilty and insisted upon going to trial, see Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985), he can not be said to have received ineffective assistance of counsel. We hold also that the district court did not abuse its discretion in barring a defendant who was accurately informed of his maximum exposure from withdrawing his plea in the face of admitted and still uncontested guilt.

### A. Ineffective Assistance of Counsel

In *Hill v. Lockhart, supra,* the Supreme Court applied to the guilty plea context the two-part test for determining ineffective assistance counsel that it had previously announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hill,* 474 U.S. at 58, 106 S.Ct. at 370; *United States v. Loughery,* 908 F.2d 1014, 1018 (D.C.Cir. 1990). The *Hill–Strickland* test requires the defendant to show both that counsel's advice was not "within the range of competence demanded of attorneys in criminal cases," *Hill,* 474 U.S. at 56, 106 S.Ct. at 369 (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)), and that as a result he was prejudiced, *i.e.* "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. at 370.

Because Horne fails to satisfy the prejudice requirement, we do not need to address the question whether his plea was within the range of competence demanded of attorneys in criminal cases. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069 ("there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one"). Admittedly, the prejudice part of the *Hill–Strickland* test may pose a difficulty in some cases because it is by no means obvious how a court is to determine the probability that a defendant would

have gone to trial. It is clear enough that a defendant must make more than a bare allegation that he "would have pleaded differently and gone to trial," *Key v. United States*, 806 F.2d 133, 139 (7th Cir.1986); *accord Gargano v. United States*, 852 F.2d 886, 891 (7th Cir.1988), but it is not clear how much more is required of him. Nor are we called upon today to decide that question because Horne has never claimed that but for counsel's errors he would have pleaded not guilty and insisted upon going to trial.

Nothing in the present record suggests that Horne had (or even now has) any intention of pleading not guilty and going to trial. Horne was clearly apprised of the statutory maximum penalty. He also "confirmed that nobody had ... induced him into pleading guilty" and "that no one had predicted, prophesied or promised him a particular sentence." *United States v. Smith*, 915 F.2d 959, 964 (5th Cir.1990). The district court also warned Horne that it could impose a more severe sentence than the sentence called for by the Guidelines. *Cf. Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir.1990) (defendant "suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court"). Moreover, during the plea colloquy, Horne admitted possession of the guns and possession of the drugs with intent to distribute them, as charged, and he has never repudiated those sworn admissions nor claimed to have any defense to the charges to which he pled guilty. Thus Horne "does not maintain ... that he is innocent of the charges in the indictment, or that a plausible defense to those charges exist[s]." *Czere v. Butler*, 833 F.2d 59, 64 (5th Cir.1987) (quotation marks and citation omitted).

Horne has offered nothing to suggest that he would have succeeded if he had gone to trial, and indeed "the 'overwhelming' evidence suggests that appellant's decision to plead guilty was a rational choice." *Lopez–Nieves v. United States*, 917 F.2d 645, 650 (1st Cir.1990) (dictum). It is apparent, therefore, that Horne wants

to withdraw his guilty plea solely in order to strike a better deal with the prosecutor. The constitutional requirement of effective assistance of counsel is intended, however, to guarantee a fair disposition of defendant's case, not to ensure that he is able to drive the hardest possible plea bargain with the Government. *See Fields v. Attorney General of Md.*, 956 F.2d 1290, 1298 (4th Cir.1992). As the Seventh Circuit said in *Gargano v. United States, supra*, the defendant "does not suggest that he is not guilty. He only suggests that he should have had the opportunity to strike a harder bargain with the government. This is not enough to establish prejudice." 852 F.2d at 891. *Accord United States v. Arvanitis*, 902 F.2d 489, 495 (7th Cir.1990).

In a post-argument submission, Horne draws our attention to *United States v. Day*, 969 F.2d 39 (3d Cir.1992), in which the court found that the defendant was prejudiced by counsel's inaccurate estimate of his sentencing range under the Guidelines. In that case, which is the converse of this case, the defendant went to trial (rather than plead guilty) in reliance upon counsel's underestimate of his Guidelines exposure should he be convicted. *See id.* at 42. Precisely because the defendant in *Day* did not plead guilty, however, he was not informed by the court that he faced a far higher maximum sentence than his lawyer had estimated, nor was he told that it was impossible for anyone to make a reliable estimate of his Guidelines range prior to compilation of the presentence report. In the present case, by contrast, the appellant was expressly told by the court, before it was too late, that he should not rely upon any estimate made by his counsel or anyone else. As a result, *Day* affords no support for Horne's cause.

### B. Abuse of Discretion

■ Rule 32(d) of the Federal Rules of Criminal Procedure provides that

If a motion for withdrawal of a plea of guilty ... is made before sentence is imposed, the court *may* permit withdrawal of the plea upon a showing by the

defendant of any *fair and just reason....*

Fed.R.Crim.P. 32(d) (emphases added). Under this rule, "permission to withdraw rests in the sound discretion of the trial court," *United States v. Davis*, 617 F.2d 677, 685 (D.C.Cir.1979), and "[r]eversal of a district court's denial of a motion to withdraw a plea ... is uncommon." *United States v. Loughery*, 908 F.2d 1014, 1017 (D.C.Cir. 1990).

 A court in this circuit considers three factors when determining whether there is any fair and just reason for allowing a defendant to withdraw a guilty plea. *See United States v. Mathis*, 963 F.2d 399, 410 (D.C.Cir.1992). First, the court examines whether the defendant has asserted that he is innocent. *See United States v. Barker*, 514 F.2d 208, 220 (D.C.Cir.1975) (*en banc*). A defendant's failure to assert his innocence, although not in itself dispositive, "certainly militates against withdrawal." *Everett v. United States*, 336 F.2d 979, 982 n. 10 (D.C.Cir.1964). Here, as we have seen, the appellant has not proffered any defense. His failure in any way to contest his guilt strongly supports the district court's denial of his motion to withdraw.

 Second, the court considers such prejudice to the public's legitimate interests as would arise if it were to grant the defendant's belated request to go to trial. *See United States v. Russell*, 686 F.2d 35, 39 (D.C.Cir.1982); *Barker*, 514 F.2d at 222. If withdrawal of the guilty plea would substantially prejudice the Government's ability to prosecute the case or unduly inconvenience the court, then "[t]he movant's reasons must meet exceptionally high standards," *Barker*, 514 F.2d at 222, and withdrawal is almost never allowed. Although the Government alleges no such difficulty in this case, this court is always properly reluctant to find that a district court abused its discretion in denying a motion to withdraw a guilty plea because withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice. As the Supreme Court observed in *Hill*, permitting withdrawal of a guilty plea "undermines confidence in the integrity of our procedures ..., increas[es] the volume of judicial work, [and] inevitably delays and impairs the orderly administration of justice." 474 U.S. at 58, 106 S.Ct. at 370 (citation and quotation omitted); *accord United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989). For this reason, the judicial system consecrates the guilty plea as a "grave and solemn act," *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *Barker*, 514 F.2d at 221, and this court must have a compelling reason indeed before it can say that a district court abused its discretion in upholding the finality of a guilty plea.

Finally, and "most importantly, the district court must consider whether there was some [constitutional or procedural] defect in the original plea." *Mathis*, 963 F.2d at 410. As we have seen, in this case there was no constitutional defect. As for procedures, the district court assiduously complied with the requirements of Rule 11. The court made sure that Horne was aware of the maximum sentence he could conceivably face and that no promise of a more lenient sentence had been made to him. The court specifically informed Horne that no one—not even the judge—could know what sentencing range would apply until the presentence report was available. Moreover, the court advised Horne that it could impose a more or less severe sentence than the one presumptively called for by the Guidelines.

Now Horne wants to withdraw his plea only because he has since realized that his sentence would indeed be—as the court had warned it might be—more severe than his counsel had predicted. It is neither unfair nor unjust, however, to hold the defendant to his solemn representation to the court, which he made after he was warned by the court of his maximum exposure and of the impossibility of determining the applicable sentencing range prior to the preparation of the presentence report. *See Sweeney*, 878 F.2d at 69–70.

Although Rule 11 does not require the district court to indicate the sentencing

range that will most likely be applicable to the defendant, the Rule 11 colloquy still provides the defendant with an important warning, because "[c]hoosing a sentence under the Guidelines is not a purely mechanical task." *Id.* at 71; *see* Advisory Committee note to 1989 Amendment to FED.R.CRIM.P. 11, 18 U.S.C.App., p. 56 (1991) (it is "impracticable, if not impossible, to know which guidelines will be relevant prior to the formulation of the presentence report.") The Guidelines take account of many factors, and uncertainty bedevils any estimate of a sentence made before the presentence report is available; the district court is simply not in a position at that time to confirm a prediction made by counsel. Instead the court uses the Rule 11 colloquy to dispel any misconceptions that the defendant may have about his likely sentence and to ensure that his plea is "not the result ... of promises apart from a plea agreement." FED.R.CRIM.P. 11(d). Thereafter,

> if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and the defendant.

*United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir.1992) (*en banc*). Indeed, Rule 32(d) was drafted in recognition that

> Rule 11 now provides for the placing of plea agreements on the record, for full inquiry into voluntariness of the plea, for detailed advice to the defendant concerning his rights and the consequences of his plea and a determination that the defendant understands these matters, and for the determination of the accuracy of the plea.

Advisory Committee notes on the 1983 Amendment to FED.R.CRIM.P. 32, 18 U.S.C.App., p. 114 (1991). As a result, when a defendant is told during his Rule 11 hearing that he can not rely upon the sentencing estimate of his counsel and is then sentenced within the proper Guidelines range, it is difficult to see the unfairness or injustice of holding him to his bargain—especially where, as here, he makes no colorable claim of innocence.

## III. CONCLUSION

The appellant's Sixth Amendment claim fails because he has failed to establish that, but for counsel's error, he would have pleaded not guilty and insisted on going to trial. Moreover, the district court, which had complied with the requirements of the Rule 11, did not abuse its discretion in denying the appellant's motion to withdraw his guilty plea based upon counsel's underestimate of the likely sentence he would receive. For the reasons stated above, the judgment of the district court is

*Affirmed.*

BUCKLEY, Circuit Judge, writing separately for the court:

We wish to make a recommendation concerning the taking of guilty pleas. Our reason for writing separately is to emphasize that our recommendation is just that— a suggestion that is without the force of law.

With the advent of the Guidelines promulgated by the United States Sentencing Commission, certain goals of the Rule 11 plea-taking procedures have become more difficult to achieve. That rule was designed to make sure that a guilty plea is both voluntary and informed. Yet, while Rule 11 requires a court to advise the defendant of the "maximum possible penalty provided by law" for the offense or offenses of which he is charged, in many federal criminal cases today, this statutory maximum is irrelevant. The reality is that the sentencing court is confined to the range of penalties prescribed by the Guidelines except in rare instances in which an upward departure is permitted. *See* 18 U.S.C. § 3553 (1988); *United States v. Molina*, 952 F.2d 514, 518–20 (D.C.Cir.1992). In this instance, for example, the maximum jail sentence for the crimes to which Andre Horne pled guilty was fifty years—almost twice the maximum permitted under the Guidelines.

Given this reality, defense counsel may advise their clients by attempting to forecast sentences under the Guidelines—even though they know that fixing sentences under the Guidelines is fraught with complexity, and that it is only on the basis of the presentence reports produced by a district court's probation office that Guidelines ranges can be computed with confidence. In some instances, then, a defendant pleading guilty will be torn between his counsel's predictions and the trial judge's admonitions that reliable estimates must await the issuance of the presentence report. In this case, Horne was indeed asked whether sentencing predictions had been made to him. He said absolutely not; his counsel interjected that certain Guidelines enhancements had been discussed; and the presiding judge was left with an impression that estimates had been made, but without any assurance as to what exactly they were. Transcript of Feb. 20, 1990, plea hearing at 23.

Because the Guidelines have largely replaced the statutes as the determinants of the maximum penalty facing criminal defendants, we recommend that, wherever feasible, the district court make their presentence reports available to defendants before taking their pleas. By doing so, sentencing judges (and reviewing courts) will have greater confidence that pleas are both willing and fully informed. And because a Guidelines policy statement requires district courts to review presentence reports before accepting plea agreements, *see* United States Sentencing Commission, *Guidelines Manual* § 6B1.1(c), p.s. (Nov. 1992), providing the defendant with a copy of the report should not, in most cases, materially delay the plea proceedings.

In making this recommendation, we are mindful of the strict resource constraints faced by the district court's probation office and the severe time pressures confronting the district judges themselves. Hence, we do not suggest that defendants have a right to peruse their presentence report before pleading. Nor do we question that, in a given case, it may not be feasible to await the completion of a report or that there may be valid reasons for withholding the report until after the plea is accepted. We do no more than suggest the desirability of such a practice in the run of cases. *Cf. United States v. Salva*, 902 F.2d 483, 488 (7th Cir.1990) ("We do ... believe that defendants will be able to make more intelligent choices about whether to accept a plea bargain if they have as good an idea as possible of the likely Guidelines result").

BUCKLEY, Circuit Judge, concurring:

I write, first, to underscore something that ought to be self-evident, but which experience suggests may not be. The standards we apply in our review of a district court's exercise of its discretion under Rule 32(d) of the Federal Rules of Criminal Procedure are necessarily different from those that govern the district court's exercise of that discretion. Among the reasons for this is that it is not our task to determine whether a defendant's motion to withdraw a guilty plea should have been denied; it is to determine whether the district court abused its discretion in denying it. Furthermore, while the district court will usually make its decision before sentencing, an appellate court will hear the case only after the criminal proceedings have run their course.

Thus, while we will be reluctant to overturn the denial of a withdrawal motion where the defendant has failed to assert his innocence, the district court need not give dispositive weight to such a failure. *See, e.g., United States v. Joslin*, 434 F.2d 526, 531 n. 9 (D.C.Cir.1970) ("Appellant's failure to avow innocence ... can, of course, be taken into account ... but is not conclusive in itself"); *Bishop v. United States*, 349 F.2d 220, 221 (D.C.Cir.1965) ("avowal of innocence" as "a predicate" to withdrawal "is not the rule when a plea is withdrawn prior to sentencing"). And while we will consider the prejudice to the public's interest in finality and the orderly administration of justice, the district court's concern is with the prejudice to the Government's ability to prosecute the case and any undue inconvenience to the court that may result from a tardy withdrawal

motion. *See United States v. Barker*, 514 F.2d 208, 222 (D.C.Cir.1975) (*en banc*) (defendant's reasons for requesting withdrawal "must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially prejudiced the Government's *ability to prosecute the case*") (emphasis added); *see also Pelletier v. United States*, 350 F.2d 727, 728 (D.C.Cir.1965) (denying a request for plea withdrawal made in the middle of trial).

In sum, in this circuit, the standard governing a district court's exercise of its discretion under Rule 32(d) remains "a lenient one," and the district court's "broad discretion to decide whether or not withdrawal is appropriate" remains undisturbed. *See United States v. Abreu*, 964 F.2d 16, 18 (D.C.Cir.1992) (citing *United States v. Loughery*, 908 F.2d 1014, 1017 (D.C.Cir. 1990)).

My second purpose in writing is to call attention to what I see as a fundamental tension in present-day pleading procedure. I have no doubt that our opinion decides this case properly under the Federal Rules of Criminal Procedure, the United States Sentencing Guidelines, and our circuit precedent; and given the overwhelming weight of the evidence against Andre Horne, there can be no doubt that justice has been done here. Yet I am left with a sense of unease that I suspect was shared by the district judge when he denied Horne's motion to withdraw his plea. *See* Transcript of July 6, 1990, withdrawal hearing at 20 (disparity between predicted and actual sentencing range "so great, it gives me great pause.") Horne's decision to forego the exercise of a constitutional right was not as informed as it could have been, hence not as voluntary as it might have been. To those at work adapting the Rules and Guidelines to minimize such shortfalls, I offer some observations.

As a consequence of the binding nature of the Sentencing Guidelines, plea agreements today will be negotiated with an eye on the penalties to be found in the Guidelines rather than in the United States Code. With the significance of the Guidelines fixed in his mind as the "real world," a defendant is apt to view a trial judge's mandatory reference to the statutory maximum sentence for what it has become—a formality; and it should surprise no one that a defendant might dismiss it as such. In such a case, the Rule 11 proceeding will have failed to achieve a significant purpose.

In this case, as required by the Rule, the district court advised Horne that he faced a statutory maximum sentence of fifty years in jail, almost twice the maximum permitted by the Guidelines as ultimately computed. Transcript of Feb. 20, 1990, plea hearing at 21. The court also advised him, in accordance with the Rule, that "there are guidelines and they may apply to your case"; and that "after we find out what the guidelines are in your case the Judge has the authority to impose a sentence that could be more severe or less severe than the sentence called for by the guidelines." *Id.* at 14–15. While faithful to the Rule, these cautions suggest that the Guidelines are advisory only. Yet we must assume that a defendant will know that his sentence will be determined by them. As Justice Scalia noted in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), "[w]hile the products of the Sentencing Commission's labors have been given the modest name 'Guidelines,' they have the force and effect of laws prescribing the sentences criminal defendants are to receive." *Id.* at 413, 109 S.Ct. at 675–76 (Scalia, J., dissenting) (citations omitted).

The difficulties created by this tension between Rule 11 and the realities of sentencing are compounded by another, more fundamental tension, one implied by the very phrase, "plea bargaining." As noted in our opinion, a guilty plea is a "solemn act"—an admission of guilt and acceptance of moral responsibility. A bargain, by contrast, is a pragmatic exchange based on an understanding of mutual advantage. A defendant's understanding of the maximum penalties he will face if he enters a guilty plea may be of critical importance to the bargaining aspect of a plea agreement—that is, to the defendant's decision to accept the Government's offer rather than assume the risks of a trial. In light of the

new realities, the defendant and his counsel will look not to the statute books, but to the Guidelines in order to determine what that maximum might be.

The weighing of an assured penalty against the risks inherent in going to trial on a more serious charge may have little relevance to the moral aspects of a plea. Yet if, after his plea is accepted, a defendant should find that the maximum penalty facing him is significantly larger than the one he would have willingly accepted as an alternative to going to trial, he may well be trapped by the formal implications of a guilty plea and the failure of the Rule 11 proceeding to provide him with a reliable understanding of its consequences. Rule 11, then, can contribute to the problems posed by sentencing surprises in two ways: by failing to inform defendants before they plead as to the penalties they realistically face; and by making it more difficult to withdraw a plea once it has been accepted.

If, as I believe, the new Guidelines regime has created a gap between what Rule 11 aspires to and what it now achieves, that gap will have to be bridged by the Advisory Committee on Criminal Rules and the Sentencing Commission, which has authority to set standards for the acceptance of plea bargains. *See* 28 U.S.C. § 994(a)(2)(E) (1988). These bodies are engaged in monitoring and revising our procedures to ensure their fairness. I hope they will find these observations of interest.