UNITED STATES of America,

v.

Keith REED, Defendant.

Crim. No. 92–0187–03–LFO.

United States District Court,
District of Columbia.

June 4, 1993.

Abby J. Stavitsky, Asst. U.S. Atty., Washington, DC, for U.S.

G. Allen Dale, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

OBERDORFER, District Judge.

Defendant Keith Reed has moved to withdraw his guilty plea, entered on October 14, 1992, to a one count charge of unlawful possession with the intent to distribute five grams or more of cocaine base. Because the Rule 11 colloquy failed properly to inform defendant of the meaning and effect of supervised release, defendant's motion to withdraw his plea is granted.

## I. FACTS

Defendant and his brother and sister originally were charged, in a three count indictment, with distribution of cocaine base and possession with intent to distribute five grams or more of cocaine base. On the morning of July 27, 1992, the scheduled trial date, defendant and his brother arrived at the Court intoxicated and were incarcerated for 24 hours, upon the motion of their counsel. Following this 24 hour period, defendant exhibited delirium tremens. His trial accordingly was severed. On August 5, 1992, he was ordered to the custody of the Bureau of Prisons ("BOP") for a psychiatric and psychological examination, pursuant to 18 U.S.C. § 4241, et seq., to determine his competency to stand trial.

In a report dated September 10, 1992, the BOP mental health staff diagnosed defendant as suffering from alcohol abuse and antisocial personality disorder. The report concluded, however, that Reed was competent to stand trial. See Forensic Evaluation dated Sept. 10, 1992, at 5. By a letter dated October 6, 1992, the BOP warden informed the Court that although defendant suffered from severe alcohol abuse and had borderline intellectual functioning (full scale intelligence score of 73), he was not suffering from a mental disease or defect rendering him incompetent to stand trial. Trial accordingly was rescheduled for October 14, 1992.

On the morning of October 14, 1992, just prior to the commencement of trial, defendant's counsel, Robert Werdig, informed the Court that defendant was interested in entering a guilty plea. Defense counsel asked for a fifteen minute recess, during which time he discussed the guilty plea with the prosecution and defendant. When the Court reconvened, the Court inquired of Werdig in the presence of Reed as follows:

COURT: Have you advised Mr. Reed of his exposure to sanctions; that is, how much his sentence might be?

WERDIG: Mr. Reed has been advised that the statutory minimum for possession of this amount of drugs is between five and 40 years, but that due to prior convictions, there is an enhancement provision of 21 U.S.C. § 841(b)(1)—841(a)(b)—whatever the provision is that's in the indictment—that he is subject to a ten-year mandatory to life.

COURT: Ten to life. And the minimum would be ten?

WERDIG: Yes, Your Honor.

Transcript of Plea Hearing dated October 14, 1992 ("Tr.") at 5. The prosecution confirmed that Reed was facing a 10 year minimum sentence. The Court inquired what period of supervised release would be required. Werdig stated he did not know the period of supervised release "offhand." Upon investigating, he responded that Reed was facing an eight year minimum of supervised release—"[f]our years in the absence of a prior conviction and if there was such a prior conviction ... eight years." Tr. at 6.

The Court then advised Reed of the rights he would waive in entering a plea, pursuant to the requirements of Rule 11. Defendant indicated no one had threatened or coerced him into entering the plea and no promises had been made to him. Tr. at 12. The Court counseled Reed regarding the maximum and minimum penalties he was facing, stating as follows:

Court: You understand that as a result of the plea, you might be sentenced—you're facing a mandatory minimum sentence of ten years?

Reed: Yes, your Honor.

Court: And a maximum of life? And that if you're sentenced to less than life, you would have an eight-year period of supervised release under the supervision of the probation officer after you were released?

Reed: Yes, your Honor.

Tr. at 12–13. The Court did not advise Reed further regarding the terms of supervised release. Reed acknowledged to the Court that he had used alcohol and that drinking was a problem for him. He confirmed that he was entering the plea voluntarily, that he had discussed the entry of the plea fully with his attorney, and that he was satisfied with his attorney's services.

Reed then entered a plea of guilty to one count of possession with the intent to distribute 5 grams or more of cocaine base. In exchange for the plea, the government agreed to drop the distribution count in the original indictment. The government also stipulated to the amount of drugs attributable to Reed.

At a sentencing hearing on December 21, 1992, Keith Reed informed the Court that he wished to withdraw his guilty plea. Werdig stated he had met with Reed and professionally had recommended against his attempt to withdraw the plea. Werdig requested, and was granted, permission to withdraw from the case. Allen Dale, having been appointed to represent Reed, filed a motion on his behalf to withdraw the plea on the authority of Fed.R.Crim.P. 32(d) and the due process clause of the Constitution.

At a March 11, 1993 hearing on the motion to withdraw, Reed testified he is 24 years old and has consumed alcohol since age 14 or 15. He began drinking heavily in early 1992 after his mother died and was intoxicated at the time of his arrest. Reed testified that at the time he entered his plea he still was suffering from the effects of his alcohol withdrawal.

While not claiming innocence of the offense, Reed testified that, at the time he entered the plea, he believed that he was facing a mandatory minimum of five years. He confirmed no one had forced him to enter the plea and that he had heard the Court say he would receive a mandatory minimum of ten years. He nevertheless allegedly believed he was pleading to five years. Reed stated he did not understand the meaning of the sentencing guidelines and never had discussed the guidelines maximums and minimums or departures from the guidelines range with his attorney. Nor had he discussed supervised release. He testified someone had told him when he entered the plea that he either could not, or would not, be sentenced to life.

Reed's former counsel, Werdig, testified at a supplemental hearing on the motion to withdraw on March 15, 1992. Werdig claimed he had met with Reed in his office prior to the trial scheduled for July 1992. Although he had no specific recollection of the conversation, Werdig stated his "normal practice" at that meeting would have been to explain the charges Reed was facing, the statutory minimums and maximums for sentencing, and the sentencing guidelines. Transcript of Further Hearing on Defendant's Motion to Withdraw Plea dated March 15, 1993 ("Werdig Test.") at 17. He testified that at that time, there being no submission by the prosecution regarding Reed's prior convictions, he had informed Reed he was facing a mandatory minimum of five years and did not mention any possibility of a ten year sentence. Werdig reported he had not made any independent investigation of Reed's prior record. He did not indicate that he had discussed the terms of supervised release with Reed at this meeting.

Werdig stated that on September 27, 1992, the government had served him with enhancement papers, indicating Reed's prior criminal record would give him a mandatory minimum sentence of ten years. He testified that although he thereafter informed Reed of these papers, his "greatest difficulty" thereafter was communicating to Reed the consequences of the enhancement papers, i.e. that the mandatory minimum was not five years, but ten. Werdig Test. at 16.

With respect to the hurried conference the morning Reed entered the plea in October 1992, Werdig testified he had "no specific present recollection" of advising Reed about the ten year mandatory minimum. Werdig Test. at 6. He only could say that he "must

have" so advised Reed. *Id.* He also had "no recollection" of a colloquy with Reed regarding the sentencing maximum. *Id.* at 13. He stated he had not reviewed the Rule 11 questions with Reed before October 14, 1992, and had "no specific recollection" of reviewing the Rule 11 questions on that day. *Id.* at 12. He had not worked up the guidelines sentencing range for Reed, explaining that because the plea came up unexpectedly, "the events of that morning did not provide" for such discussion. *Id.* at 14. When asked if, before the trial, he had advised Reed that he would face different penalties, he simply concluded, "I must have." *Id.* at 15. Most important, Werdig conceded that he had not recalled, when asked by the Court prior to Reed's entering the plea, what the period of supervised release would be and that he therefore "could not have just previously advised Mr. Reed" regarding supervised release. *Id.* at 14.

## II. CONCLUSIONS

 Rule 32(d) of the Federal Rules of Criminal Procedure provides that "before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." This generally requires an assertion of innocence or some constitutional or procedural flaw in the plea, as well as an absence of substantial prejudice to the government or undue burden to the court. *See United States v. Mathis,* 963 F.2d 399, 410 (D.C.Cir.1992). The standard, however, is "a lenient one," *United States v. Loughery,* 908 F.2d 1014, 1017 (D.C.Cir.1990), *see also, United States v. Horne,* 987 F.2d 833, 840 (D.C.Cir.1993) (Buckley, J. concurring), and the district court has "broad discretion to decide whether or not withdrawal is appropriate." *Id., quoting United States v. Abreu,* 964 F.2d 16, 18 (D.C.Cir.1992). The granting of a motion to withdraw a plea therefore "rests in the sound discretion of the trial court," *United States v. Davis,* 617 F.2d 677, 685 (D.C.Cir.1979), and will not be reviewed except for abuse of

discretion. *E.g., United States v. Barker,* 514 F.2d 208, 219 (D.C.Cir.1975) (*en banc*).

 Defendant offers three primary arguments in support of his motion to withdraw the plea: (a) that because of lingering effects of his alcohol abuse, and the inadequacy of Werdig's effort to communicate the consequences of the sentence enhancement, he did not understand the consequences of his plea; (b) that a separate determination of his competency to enter a guilty plea should have been made; and (c) that the Court's Rule 11 inquiry was deficient for failing to explain the terms of supervised release.[1] Because the Rule 11 deficiency justifies granting Reed's motion, that is the only claim addressed here.

"A guilty plea cannot be considered voluntary under Rule 11 ... if the defendant is not 'fully aware of the direct consequences of the plea.'" *United States v. Mathis,* 963 F.2d 399, 410 (D.C.Cir.1992) (citations omitted). Reed acknowledges the Court informed him before accepting the plea that he would be facing an eight-year term of supervised release. He asserts, however, that "[b]y not informing the defendant of the consequences of a violation of his term of supervised release, namely that he could be returned to prison for the full term of the period of supervised release, the Court did not inform the defendant of the maximum penalty he faced." Motion to Withdraw Guilty Plea at 8. Reed claims his plea thus was not entered knowingly and that he is entitled to relief.

 The Rule 11 colloquy was established "to dispel any misconceptions that the defendant may have about his likely sentence" and to ensure that a defendant relinquishes his rights knowingly and voluntarily. *Horne,* 987 F.2d at 838. One of the many purposes of the rule is to "correct[ ] or clarif[y] the earlier erroneous information given by the defendant's attorney." *Id.* Rule 11 therefore

> provides for the placing of plea agreements on the record, for full inquiry into voluntariness of the plea, for detailed advice to

---

1. Defendant also asserts it would be "fair and just" to allow him to withdraw the plea, since he was charged with a specific intent crime and would assert a legal defense of intoxication were the case to proceed to trial. (Reed testified that his original counsel never discussed the possibility of raising alcoholism or any other defense.)

the defendant concerning his rights and the consequences of his plea and a determination that the defendant understands these matters, and for the determination of the accuracy of the plea.

*Id. quoting* Advisory Committee notes on the 1983 Amendment to Fed.R.Crim.P. 32, 18 U.S.C.App. p. 114 (1991). Although a district court may grant a motion to withdraw a plea in its discretion, failure to comply substantially with the requirements of Rule 11 is fatal to the acceptance of any plea agreement. *See United States v. Stead,* 746 F.2d 355, 356 (6th Cir.1984).

▮▮▮▮ Rule 11(c)(1) was amended in 1982 and 1989 to require that courts inform a defendant entering a plea of the effect of any special parole term or supervised release.[2] As the Fourth Circuit recognized in *Moore v. United States,* 592 F.2d 753, 755 (4th Cir. 1979),

> Special parole is a significant penalty ... Explanation of special parole in open court is therefore essential to comply with the Rule's mandate that the defendant be informed of "the maximum possible penalty provided by law."

(citations and footnote omitted). Some courts have suggested that where the supervised release constitutes significantly less time than the maximum sentence allowed, failure specifically to define the terms of supervised release is not fatal to the Rule 11

inquiry. *Moore,* 592 F.2d at 755; *United States v. Bachynsky,* 934 F.2d 1349 (5th Cir. 1991) (*en banc*); *United States v. Barry,* 895 F.2d 702, 704 (10th Cir.1990). In *Bachynsky,* however, the Fifth Circuit concluded that failure to inform a defendant of the effects of supervised release could require automatic reversal even if the defendant had been informed of the maximum possible penalty, when accompanied by exacerbating circumstances.[3]

Moreover, the Fifth Circuit recently held that a district court's failure to inform a defendant of "the meaning or effect of supervised release," *United States v. Scott,* 987 F.2d 261, 265 (5th Cir.1993), together with other errors in the minimum confinement and maximum fine,[4] was clear error, constituting "an entire failure to address a core concern, warranting automatic reversal of the conviction." *Id., quoting United States v. Punch,* 709 F.2d 889, 897.

This Court's failure to explain the meaning or consequences of defendant's eight year minimum term of supervised release, particularly when examined in light of defendant's limited mental capacity and his apparently less than effective assistance of counsel, establishes that it would be "fair and just" to allow defendant to withdraw his plea in this case. Granting Reed's motion neither will substantially prejudice the government's ability to prosecute the case[5] nor unduly incon-

---

**2.** Rule 11(c)(1) now requires the court to inform the defendant, *inter alia,* of "the mandatory minimum penalty provided by law, if any and the maximum possible penalty provided by law, including the effect of any special parole or supervised release."

**3.** 934 F.2d at 1359–60. Recent dicta from this Court of Appeals also suggests that the fact that Reed was facing a possible maximum sentence of life need not detract from his Rule 11 claim here. Although Rule 11 focuses on the "maximum possible penalty provided by law," this statutory maximum often "is irrelevant" in federal cases falling under the sentencing guidelines. *Horne,* 987 F.2d at 838 (Buckley, J., writing separately for court). As the Court of Appeals acknowledged, in reality "plea agreements today will be negotiated with an eye on the penalties to be found in the Guidelines rather than in the U.S.Code." By focusing exclusively on the maximum statutory sentence, therefore, "the Rule 11 proceeding will have failed to achieve a signifi-

cant purpose." *Id.* at 840 (Buckley, J., concurring).

As Reed's newly appointed counsel points out, Reed was facing a guidelines sentencing range of less than the statutory minimum. Had he been informed of this guidelines range, it is unlikely he rationally would have entered a plea.

**4.** The district court erroneously had stated that the minimum period of confinement would be 20 years, rather than ten, and that the maximum fine would be four million rather than eight million dollars. The court also had failed to state the maximum period of supervised release. *Scott,* 987 F.2d at 265.

**5.** The only potential prejudice offered by the government was the possibility that one cooperating witness might not be available to testify at trial. At the hearing on defendant's motion, however, the prosecution conceded that no effort had been made to locate the witness and that any prejudice therefore was speculative.

328

venience the court. *United States v. Barker*, 514 F.2d 208, 222 (D.C.Cir.1975) (*en banc*). His motion therefore appropriately is granted.

\* \* \* \* \* \*

Accordingly, for the foregoing reasons, it is this 3d day of June, 1993, hereby

ORDERED: that defendant's Motion to Withdraw Guilty Plea should be, and is hereby, GRANTED; and it is further

ORDERED: that the parties shall attend a status conference on June 22, 1993, at 9:30 a.m. in Courtroom No. 3.

