**UNITED STATES of America**

v.

**Andre WATLEY, Appellant.**

**No. 90–3288.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 4, 1993.

Decided March 19, 1993.

Mark J. Rochon, for appellant. W. Gary Kohlman also entered an appearance, for appellant.

Eric L. Yaffee, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, and Roy W. McLeese, III, Asst. U.S. Attys., were on the brief, for appellee.

Before: WALD, RUTH BADER GINSBURG, and SILBERMAN, Circuit Judges.

Opinion for the court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This is an appeal from the district court's failure to grant defendant Andre E. Watley's pre-sentence motion to withdraw his guilty plea. The motion emphasized a misimpression shared by all participants at the plea hearing—prosecutor, defense counsel, defendant, and district judge. It was understood by court and counsel, and conveyed to Watley at the time of his plea, that Watley faced a potential *maximum* period of imprisonment of ten years. It was not understood by any plea hearing participant, however, that the maximum was also the minimum, i.e., that the court, applying the current sentencing regime to the plea, would have no discretion to exercise but would be obliged to impose a ten year prison term and nothing less.

Because of the incorrect information given to Watley before and at the plea hearing—information conveying that the court readily could, and likely would, set his sentence at a figure between five and ten years—Watley was not equipped intelligently to accept the plea offer made to him. We therefore vacate the district court's judgment and remand the case with instructions to grant defendant Watley's motion to withdraw his guilty plea.

I.

On January 4, 1990, a two-count indictment was filed against defendant Watley. Count 1 charged him with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a) and (b)(1)(B)(iii); count 2 charged him with use of a firearm during a drug offense, in violation of 18 U.S.C. § 924(c). On May 29, 1990, the government filed an information charging Watley with conspiracy to possess with intent to distribute cocaine, in violation of 18 U.S.C. § 371. That same day, pursuant to an oral agreement between the prosecutor and defense attorney, defendant entered a plea of guilty to count 2 of the indictment and to the information, and the government agreed to dismiss count 1 of the indictment.

The transcript of the hearing on Watley's plea reveals the insistence of the judge that Watley be told in full what penalty he confronted, and the understandings and expectations of the participants in that regard. At the outset, Watley's counsel represented:

[Watley] realizes that each count carries a sentence of five years, and that he potentially faces 10 years imprisonment. He knows all of that. He is pleading guilty because he is guilty.

We consider this to be a very provident plea.

Transcript of Plea, May 29, 1990, at 7. Asked by the court whether he understood his lawyer's statement, Watley answered "Yes, I do." *Id.* After questioning Watley about the evidence and his understanding of the plea proceeding, the court inquired into Watley's comprehension of the potential sentence. We set out the ensuing exchange in which the court, Watley, and the Assistant United States Attorney (AUSA) participated.

> COURT: Do you understand what the likely penalty is in your case?
>
> WATLEY: Yes, I do, Your Honor.
>
> . . . .
>
> COURT: What is it?
>
> WATLEY: It is two points—
>
> COURT: Pardon me? Speak out.
>
> WATLEY: It is two points if I don't cooperate with the—my judge.
>
> COURT: . . . . I don't have anything to do with any cooperation. So far as I am concerned, I do not want to hear it. . . .
>
> Now what are the terms of the plea agreement? Is cooperation involved in this plea agreement?
>
> AUSA: No, Your Honor.
>
> COURT: Let me ask you this question— has anybody told you how much time you are going to get when the time comes to sentence you?
>
> WATLEY: Yes.
>
> COURT: What did they tell you?
>
> WATLEY: That I could be—if I didn't take the plea offer—I would be doing something like 18–18 [sic] years, 20 years—I ain't sure.
>
> COURT: That if you didn't take a plea offer, you would get 18 years; is that what they told you?
>
> WATLEY: Yes, Your Honor.
>
> COURT: . . . . I asked you—has anybody told you how many years you are going to get?
>
> WATLEY: Yes, Your Honor.
>
> COURT: What did they tell you?
>
> WATLEY: Five—five years—I think five or 10 years.

> COURT: Beg your pardon?
>
> WATLEY: I think five or 10 years.
>
> COURT: Well son, let me say this to you—this is not a casual matter you are going through. This is rather serious business. You think five or 10 years, right?
>
> WATLEY: Yes.
>
> COURT: Now do you understand what time you are going to get in this case? There is a whole lot of difference between five or 10 years.
>
> WATLEY: Between five or 10 years, as I understand.
>
> COURT: Well I think in the circumstances, you better have some more discussions with your lawyer and get some definitive answers, because you folks have the calculator. You know exactly how much time he is going to get. I don't see why he doesn't know about it. And there is a whole lot of difference between five and 10 years. . . . And I think now, under the guidelines, the man ought to know how much time . . . the prosecutor has decided to give [him].
>
> AUSA: Well Your Honor, from what I understand, the Probation Officer will actually make the final determination. And with respect to both of these counts, there is a cap of five years. There is a mandatory minimum of five for the gun charge, and there is a cap of five for the conspiracy charge. And I have not spoken with the Defendant, but I imagine when he is saying five to 10 years, it is recognizing that he would get five years for the gun charge, and he could get five years or less for the drug charge, depending on how Probation calculates what his sentence will be.
>
> COURT: What I want to understand is whether or not he understands what is happening. As I understand it, the Probation Officer . . . has not calculated it. But don't kid me about that. You do, too. And when you people charge a person or accept a plea, you work the calculator, the Probation Officer notwithstanding.

I want to know how much time you calculate this man is supposed to get. And without regard to the nuances of the Probation Officer about a month here and a month there, the point is, he has to get five years on the gun charge, right?

AUSA: Yes, Your Honor.

COURT: That five years has to be consecutive to whatever he gets on the conspiracy charge, is that your understanding?

AUSA: That is my understanding.

COURT: And the conspiracy charge has a five-year cap ... that is the maximum penalty for the conspiracy charge, right?

AUSA: That is correct, Your Honor. Your Honor, I can tell you what the defense counselor and I calculated what we think the figure is that Probation would come up with. I just cannot, as the Government, make that representation on the record that that is the figure he will get.

COURT: Well let me put it this way—I will do better than that—how much time have you been told that you will more than likely receive? In other words, I want to know how much time you and defense counsel have come up with.

WATLEY: Well, me and my lawyer discussed that I would be—that I would get about five or seven years.

COURT: About what?

WATLEY: Five or seven years.

COURT: Five or seven years?

WATLEY: Yes.

COURT: I think I better take this plea later.

AUSA: Your Honor, when we did the calculations as to the month[s], based upon the amount of drugs that were recovered, the 22 to 23 grams, and with Defendant's criminal history category being what we calculated as a 3, we came up with 27 to 33 months on the drug charge.

COURT: So ... we are talking about some time over seven years, between seven and eight years?

AUSA: That is how we calculated. Once again, Probation would have the final say.

COURT: You are thinking about seven and one-half years?

AUSA: Possibly, that's correct.

COURT: You understand that?

WATLEY: Yes, Your Honor.

COURT: Did you have that figure or some figure like that in mind when you decided to plea guilty?

WATLEY: Yes, Your Honor.

COURT: Other than the fact that you were told that if you did not plead guilty to these charges, that you face 18 years in jail, ... what other promises were made to you involving the plea?

WATLEY: None other. None, Your Honor.

*Id.* at 13–18. The court then accepted Watley's plea and set a sentencing date. *Id.* at 19–20.

To summarize, the court demonstrated, throughout the hearing, a strong concern that Watley, before pleading guilty, know how much time he would "more than likely receive." Watley's initial statement that he was going to get "five or 10 years" troubled the court because "[t]here is a whole lot of difference between [those numbers]." Unwilling to take the plea when Watley said he expected "five or 10 years" or when he shifted to "five or seven years," the court continued its inquiry into the information conveyed to the defendant. Only upon learning that the prosecutor and defense counsel were "thinking about seven and one-half years," and then determining that Watley had a figure "like that in mind when [he] decided to plead guilty," did the court conclude its examination and accept the plea.

Counsels' seven and one-half years calculation, the presentence report revealed, was the product of a misunderstanding. The court was indeed correct that "five years on the gun charge" was mandatory and "ha[d] to be consecutive to [the sentence] on the conspiracy charge." *See* 18 U.S.C. § 924(c)(1). But the guidelines range for

the conspiracy charge proved to be a full 70 to 87 months, not 27 to 33 months, as counsel had projected.[1] The statutorily authorized maximum sentence for the conspiracy, however, was 60 months. Because 60 months was less than the minimum of the applicable guideline range, 60 months became the guideline sentence for the conspiracy charge, see U.S.S.G. § 5G1.1(a), bringing Watley's total term to ten years.

Prior to sentencing, defense counsel unsuccessfully urged a downward departure for diminished capacity, see U.S.S.G. § 5K2.13, based on tests showing Watley's borderline range of intelligence.[2] Without ruling explicitly on Watley's motion to withdraw his guilty plea, the court, on November 27, 1990, sentenced Watley, as mandated by the penalty regime, to two prison terms of 60 months each, to run consecutively.

## II.

Acceptance of a guilty plea is controlled by Rule 11 of the Federal Rules of Criminal Procedure, which provides in relevant part:

(c) **Advice to Defendant.** Before accepting a plea of guilty ..., the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances....

....

(d) **Insuring That the Plea is Voluntary.** The court shall not accept a plea of guilty ... without first, by addressing the defendant personally in open court, determining that the plea is voluntary.... The court shall also inquire as to whether the defendant's willingness to plead guilty ... results from prior discussions between the attorney for the government and the defendant or the defendant's attorney.

Plea withdrawal is addressed in Rule 32(d), which reads:

**Plea Withdrawal.** If a motion for withdrawal of a plea of guilty ... is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

In the circumstances here presented, we conclude that Rule 11(d)'s essential "voluntariness" requirement has not been met, and that "fair and just reason" plainly warrants permission, under Rule 32(d), for withdrawal of Watley's plea of guilty.

Central to our view of the case is the perception that prevailed at the end of the May 29, 1990 plea hearing. It was inescapably evident then that a prison sentence *between* five and ten years, most likely seven and a half, was contemplated by all in attendance. When the presentence report revealed ten years as the minimum *and* maximum term of incarceration, however, the district judge openly aired his bafflement. He remarked at a status call:

[T]he imposition of the mandatory consecutive sentence bothers me because ... I don't know whether the guidelines took into account the consecutive sentencing mandate....

....

I don't understand. I don't understand the guidelines being able to come to a

1. Watley's counsel on appeal suggested that the prosecutor might have arrived at the lower figures by calculating the offense level based upon weights for powdered cocaine rather than cocaine base. Brief for Appellant at 7 n. 1; see U.S.S.G. § 2D1.1(c) (Drug Quantity Table) (setting markedly higher offense levels for cocaine base). The government tendered no accounting for the differential.

2. The tests, appellant informs us, showed an I.Q. level between 70 and 77. See Brief for Appellant at 10.

figure ... in excess of the maximum penalty.

Transcript of Status Call, November 15, 1990, at 15. Putting over sentencing for several days, the district judge noted "the glaze of noncomprehension on the eyes of everybody," including the prosecutor, probation officer, defense counsel, and the judge himself. *See id.* at 20, 22.

Eventually, however, the district judge recognized that the prison sentence corresponding to Watley's plea had been correctly calculated in the presentence report to afford the court no leeway.[3] Without further discussion, the judge sentenced Watley

[o]n the conspiracy count ... to a term of five years [and][o]n the weapons count ... to a term of five years, consecutively, because the law requires that.

Transcript of Sentencing, November 27, 1990, at 2.

Watley's first argument on appeal, if we grasp it correctly, is tied to Rule 11(c). His second argument emphasizes Rule 32(d). Watley initially maintains that the judge failed to comply with the "Advice to Defendant" instruction because the judge did not state at the plea proceeding "the maximum required sentence." It is evident, however, that the district judge followed Rule 11(c)'s direction regarding the "penalty provided by law."

■ The district judge assiduously endeavored to make certain Watley knew the *statutory* prescriptions: five years mandatory and consecutive on the gun charge, 18 U.S.C. § 924(c); five years or less on the

conspiracy charge, 18 U.S.C. § 371. Those prescriptions are the ones to which Rule 11(c) points in referring to "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." Sister courts have uniformly held, and we agree, that the Rule 11(c) instruction just quoted does not require the court to inform the defendant of the applicable guideline range. *See United States v. Gomez–Cuevas,* 917 F.2d 1521, 1526–28 (10th Cir.1990); *United States v. Salva,* 902 F.2d 483, 486–88 (7th Cir.1990); *United States v. Henry,* 893 F.2d 46, 48–49 (3d Cir.1990); *United States v. Turner,* 881 F.2d 684, 686–87 (9th Cir.), *cert. denied,* 493 U.S. 871, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989); *United States v. Fernandez,* 877 F.2d 1138, 1143 (2d Cir.1989); *see also* Fed. R.Crim.P. 11, advisory committee's note to 1974 amendments (maximum and minimum sentence figures are "usually readily ascertainable from the face of the statute defining the crime, and thus it is feasible for the judge to know specifically what to tell the defendant").

Rule 11(c)(1), since December 1989, also requires notice to the defendant that, in imposing sentence, the court must "consider any applicable sentencing guidelines." The rule does not mandate, however, that the defendant be told what guidelines will apply or the range those guidelines will indicate. *See* Fed.R.Crim.P. 11, advisory committee's note to 1989 amendment.[4] Watley does not claim any lack of awareness that the guidelines would bear on his sentence and would figure in the probation officer's calculation.[5]

---

**3.** The only possibility for lowering the sentence was a departure for diminished capacity based on defendant's borderline range of intelligence. *See supra* p. 845 & n. 2.

**4.** The court has discretion, however, to convey to the defendant specific information about the sentencing guidelines and "to inquire into the defendant's knowledge concerning guidelines." Fed.R.Crim.P. 11, advisory committee's note to 1989 amendment; *see United States v. Salva,* 902 F.2d 483, 488 (7th Cir.1990) ("[D]efendants will be able to make more intelligent choices about whether to accept a plea bargain if they have as good an idea as possible of the likely Guidelines result.").

**5.** Under Rule 11(e)(2), the district court has discretion to defer acceptance or rejection of a plea agreement pending consideration of the presentence report. *See* Fed.R.Crim.P. 32(c)(1) (permitting release of presentence report to district court, upon defendant's written consent, before acceptance of guilty plea); *cf. United States v. Horne,* 987 F.2d 833, 834 (D.C.Cir.1993) (Buckley, J., separate statement for panel) (recommending that "wherever feasible, the district court make their presentence reports available to defendants before taking their pleas"); U.S.S.G. § 6B1.1(c) (Policy Statement) (counseling that district court should review presentence report before accepting or rejecting plea agreement). Such deferral could have prevented the

■ The misunderstanding at the plea hearing, and the misleading information there conveyed to the defendant, thus did not stem from a failure to adhere to Rule 11(c)'s penalty notice instruction.[6] Rather, what later surprised counsel and baffled the district judge was the steep range the guidelines set (70 to 87 months on the drug charge and not, as the prosecutor anticipated, 27 to 33 months) *plus* the peculiar interplay of the guidelines and statutory prescriptions, which made the maximum and minimum prison terms for Watley precisely the same.

In short, Watley, through no fault on his part,[7] was given incorrect information, at and prior to the plea hearing, regarding the sentence he *could possibly* receive. As the district court strived to ascertain, "seven and one-half years" was the term on which Watley's mind was set "when [he] decided to plead guilty." *See supra* p. 844. No mere personal wish, hope or expectation,[8]

Watley's settled mind that his sentence would likely fall below ten years was a virtual condition of his plea. His misunderstanding was shared and reinforced by prosecutor, defense counsel, and—most tellingly—the district judge, who emphasized the importance of Watley's expectation by nailing down exactly the sentence Watley had "in mind." It cannot fairly be said, in this light, that Watley voluntarily agreed to forgo trial and submit to the Hobson's choice—ten years and nothing else—his plea turned out to present.[9] We therefore find securely placed Watley's argument that, assigning proper weight to the "voluntariness" requirement of Rule 11(d), he had a "fair and just reason," within the compass of Rule 32(d), to withdraw his plea.[10]

■ Post-sentence withdrawal of a guilty plea depends on a showing of "mani-

---

confusion that occurred here. But the district court, after learning that prosecutor and defense counsel had agreed on the likely guidelines result, had little reason to expect that the presentence report would contain any large surprise concerning Watley's sentence.

6. The government concedes that the district court entirely overlooked one Rule 11(c) specification: that court did not inform Watley of the supervised release term he might receive. Watley did not object to this omission in the district court; in view of our disposition of Watley's appeal, we need not decide whether the omission constituted "plain error."

7. This is not a case in which absence of information, or incorrect information, about a defendant's criminal record limited the ability of counsel and court to project the sentence. *Cf. United States v. Horne*, 987 F.2d 833, 835; *United States v. Rhodes*, 913 F.2d 839 (10th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991); *United States v. Turner*, 881 F.2d 684 (9th Cir.), *cert. denied*, 493 U.S. 871, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989). Whatever Watley's criminal record turned out to be, the criminal conduct to which he pled, in itself, carried the full ten-year prison term. Nor is this a case in which a defendant's attorney, unconfirmed by prosecutor or judge, predicted a guidelines result that ultimately proved incorrect. *Cf. Johnson v. United States*, 539 F.2d 1241, 1243 (9th Cir.) (noting that uncertainty, and risk of tactical error, are "inherent in a

guilty plea"), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 228 (1976).

8. *Cf., e.g., United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989) ("Defendants may not plead guilty in order to test whether they will get an acceptably lenient sentence."); *United States v. Hollis*, 718 F.2d 277, 281 (8th Cir.1983) (district court properly denied motion to withdraw guilty plea, despite defendant's and his counsel's expectation that sentence would be more lenient, where government had made no promises concerning length of sentence and defendant had been instructed that length of sentence was within court's discretion), *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984).

9. While the prosecutor twice referred to the probation officer's "final determination," those references were insufficient to warn Watley that the sentencing range fixed in his mind at the time of his plea might be altered radically by the probation officer's application of the guidelines. The insufficiency became all the more apparent when the district judge spoke of the probation officer's likely adjustments as "nuances" of "a month here and a month there."

10. Watley's case contrasts with the situation presented in *United States v. Horne*, 987 F.2d 833, in which we affirmed the district court's denial of a presentence motion to withdraw a guilty plea. In *Horne*, the district judge expressly told the defendant, before accepting his plea, that "he should not rely upon any [sentencing] estimate made by his counsel or anyone else." *See Horne*, 987 F.2d at 836.

fest injustice," but pre-sentence withdrawal is determined by an obviously more lenient "fair and just" standard. *See, e.g., United States v. Russell,* 686 F.2d 35, 38–39 (D.C.Cir.1982); *United States v. Barker,* 514 F.2d 208, 218–22 (D.C.Cir.), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). Even pre-sentence, however, delayed withdrawal requests are disfavored. Courts have been particularly skeptical of defendants who wait to withdraw their pleas until notification of their actual sentence or that of a co-defendant. *See United States v. Loughery,* 908 F.2d 1014, 1017 (D.C.Cir.1990); *United States v. McKoy,* 645 F.2d 1037, 1040 & n. 3 (D.C.Cir.1981). The prospect of prejudice to the government's case, sometimes occasioned by the time lapse between the plea and the motion to withdraw, is also a factor of heavy weight. *See Loughery,* 908 F.2d at 1017. Here, no co-defendant's sentence preceded the plea withdrawal motion, and the request was made less than three weeks after defense counsel's receipt of the presentence report. The case against Watley was not complex and the government does not assert any loss of evidence in the interval between the May 29, 1990 plea and the July 24, 1990 motion to withdraw.

█ The most important consideration, as the government acknowledges, *see* Brief for Appellee at 18, is "whether there was some defect in the original plea." *United States v. Mathis,* 963 F.2d 399, 410 (D.C.Cir.1992); *see Russell,* 686 F.2d at 39 ("court must consider whether the defendant's misunderstanding ... is the result of misleading statements by governmental authorities"). Rule 11(d) instructs inquiry "as to whether defendant's willingness to plead guilty ... results from prior discussions between the attorney for the government and ... the defendant's counsel." Watley was indeed influenced by such discussion, most pertinently, counsels' calculations that "came up with 27 to 33 months on the drug [conspiracy] charge," which would yield a total sentence "between seven and eight years." *See supra* p. 844.

This "mistake," *see* Motion to Set Aside Guilty Plea at 4, *i.e.,* the advice that the court *could,* and likely would, sentence Watley to less than eight years, properly ranks as a defect diminishing Watley's "aware[ness] of the direct consequences" of his plea. *See Russell,* 686 F.2d at 38 (quoting *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)).

We are mindful that, although withdrawal of a guilty plea pre-sentence is "liberally granted," reversal of a district court's denial of a withdrawal request "is uncommon." *See Loughery,* 908 F.2d at 1017 ("denial will not be disturbed absent an abuse of discretion"); *see also United States v. Horne,* 987 F.2d 833, 836 (D.C.Cir.1993) (distinguished *supra* note 10); *McKoy,* 645 F.2d at 1038. The plea hearing transcript in Watley's case, however, portrays a situation surely not common. Judge, prosecutor, defense counsel, and defendant all believed the judge possessed discretion, without resorting to a "diminished capacity" departure, to adjust the sentence to a figure "like that [Watley had] in mind when [he] decided to plead guilty." When that basic assumption turned out to be wrong, "fair and just reason" demanded that Watley be given a chance to reconsider his plea. He should not have been held to a bargain struck between prosecutor and defense counsel that relied in significant measure on sentencing discretion the district judge did not have.

———

For the reasons stated, the district court's judgment entered on Watley's plea of guilty is vacated and the case is remanded for further proceedings.

*It is so ordered.*