56 F.3d 65
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Bruce G. PECK, Defendant-Appellant.
 No. 94-5684.
 United States Court of Appeals, Sixth Circuit.
 May 22, 1995.
 
 Before: KRUPANSKY, NELSON, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant-appellant, Bruce Peck, pleaded guilty to one count of preparing a false income-tax return and three counts of failure to pay income tax. He received a 23-month prison sentence for the false-return conviction and three 12-month sentences for the others, all four sentences to be served concurrently. Additionally, Peck was assessed a $125 special penalty assessment, sentenced to one year of supervised release, and ordered to repay $30,636 in back taxes. On appeal, Peck asserts that the district court erred in denying his request to withdraw his guilty plea and in allowing the prosecution to renege on its agreement to recommend a sentence at the lower end of the applicable sentencing range. We find no error and affirm.
 
 
 2
 Peck, a professional tax-preparer, was charged in a 105-count indictment with one count of mail fraud, 101 counts of preparation of false income tax returns, and three counts of failing to file personal income tax returns. Following plea negotiations, the original indictment was dismissed and a superseding information was filed. That subsequent instrument dropped the mail fraud charge, consolidated the 101 counts concerning the preparation of false returns into one count, and re-charged the three counts of failure to file personal tax returns.
 
 
 3
 On the same day the superseding information was filed, Peck and the government executed a plea agreement that is the basis for this appeal. Pursuant to the agreement, the defendant was to enter a plea of guilty to each of the four charges against him "because he [was] in fact guilty of the charges." He also agreed that the crimes to which he was pleading carried "a combined maximum penalty of 18 years' imprisonment, a combined maximum fine of $1,000,000, and a three (3) year term of supervised release." The government and defense counsel, however, had erroneously calculated the maximum penalty, believing the three counts of failure to pay personal taxes constituted felonies, rather than the misdemeanors that they actually were. In reality, therefore, the combined maximum penalty to which Peck was subject was only six years' imprisonment, a fine of $175,000, and a one year term of supervised release.[1]
 
 
 4
 Other provisions of the plea agreement required payment by the defendant of a $200 special assessment, In exchange for that latter payment, the government agreed to recommend to the court a sentence of incarceration for the defendant at the "lowest end of the applicable guideline range."[2] Peck also conceded in the agreement that he was eligible for sentencing at offense level 15.
 
 
 5
 Peck in fact entered his guilty plea and the matter was set for sentencing. On the day of the sentencing hearing, Peck claimed that he was unable to raise the required $5,000 payment toward his tax liability. As a result, the government refused to recommend a prison sentence at the lower end of the applicable guideline range and instead requested that the court sentence Peck to the maximum allowable prison time. On November 2, 1993, the district court did sentence the defendant to concurrent 23-month prison sentences on each of the four offenses, to payment of a $200 special assessment, to concurrent three-year terms of supervised release, and to repayment of approximately $30,000 in past-due personal income taxes as a condition of such release. Immediately after the sentencing hearing, however, Peck learned of the felony/misdemeanor designation error and of the resulting error in the sentences imposed upon him. Eventually, in January 1994, the defendant filed a motion to withdraw his guilty plea based upon the mistaken advice received from his counsel in this matter.
 
 
 6
 The district court denied Peck's motion to withdraw his plea but did grant the government's motion to correct sentence. On May 9, 1994, Peck was resentenced to a 23-month prison sentence for preparation of a false income tax return and to concurrent 12-month sentences for failure to pay personal taxes. The defendant was also ordered to serve concurrent one-year sentences on supervised release, to pay a special assessment of $125, and to make restitution for approximately $30,000 in back taxes owed.
 
 
 7
 Peck first insists that he should have been allowed to withdraw his guilty plea after learning of the error made by defense counsel, the prosecutor, and the district judge in calculating the severity of the potential sentences to be imposed upon conviction for failure to pay personal income taxes. He argues that failure to allow such withdrawal resulted in entry of a guilty plea that was not knowing and voluntary.
 
 
 8
 The law is well-established that a defendant seeking withdrawal of a guilty plea bears the burden of establishing the merits of the motion to withdraw. United States v. Triplett, 828 F.2d 1195, 1197 (6th Cir. 1987). Moreover, "although withdrawal of a guilty plea pre-sentence is 'liberally granted,' reversal of a district court's denial of a withdrawal request 'is uncommon,"' United States v. Watley, 987 F.2d 841, 848 (D.C. Cir. 1993), because the district court is afforded broad discretion in determining whether to grant such a motion. Triplett, 828 F.2d at 1197. Consequently, "[t]he decision of the district court to deny a motion for plea withdrawal should be sustained unless the court has abused its discretion." United States v. Spencer, 836 F.2d 236, 238 (6th Cir. 1987), cert. denied, 486 U.S. 1009 (1988).
 
 
 9
 While a "[p]ost-sentence withdrawal of a guilty plea depends on a showing of 'manifest injustice,' ... [a] pre-sentence withdrawal is determined by an obviously more lenient 'fair and just' standard." Watley, 987 F.2d at 847-48. See also Fed. R. Crim. P. 32(d). Even pre-sentence requests for withdrawal are disfavored, however, when the defendant waits to withdraw a plea until after notification of an actual sentence. Watley, 987 F.2d at 848.
 
 
 10
 In this case, because of the necessity for resentencing, Peck's plea-withdrawal request technically was made prior to final imposition of punishment. Consequently, we must determine whether a "fair and just" reason has been advanced to justify withdrawal of the guilty plea. In evaluating whether such a reason has been offered, the court should examine the following factors: (1) the length of time between the entry of the guilty plea and the filing of the motion to withdraw it; (2) the reason the grounds for withdrawal were not presented earlier in the proceedings; (3) whether the defendant has continued to maintain innocence of the charges brought; and (4) "the circumstances underlying the entry of the plea of guilty, the nature and background of the defendant, and whether the defendant has admitted guilt." Spencer, 836 F.2d at 239-40.
 
 
 11
 Peck entered his guilty plea at a hearing conducted on August 30, 1993. On November 9, 1993, the government filed a motion to correct sentence, placing the defendant on notice of the grounds he would later put forward in support of his attempt to withdraw his guilty plea. Despite that notice in early November 1993, however, the defendant did not bring to the attention of the court his intent to withdraw the plea until January 10, 1994. This lengthy period of time between acquisition of knowledge of the basis for seeking withdrawal of the plea and the actual motion to effect the withdrawal is unexplained by the defendant.
 
 
 12
 Also, the defendant did not consistently maintain his innocence throughout the proceedings. In fact, Peck freely conceded his guilt of the offenses with which he was charged. Moreover, the reason advanced for seeking the plea withdrawal (misinformation regarding maximum sentencing possibilities) did not adversely affect the effective sentence imposed upon the defendant. In fact, upon resentencing, the concurrent prison sentence remained the same, the period of time that Peck was to be on supervised release after completion of his prison sentence was actually reduced by two years, and the amount of the special assessment due was reduced from $200 to $125.
 
 
 13
 The defendant does contend, however, that had he been aware that he was facing conviction for only one felony and three misdemeanors, rather than four felonies, he would have chosen to take his chances with a trial instead of pleading guilty. While Peck's contention is plausible, he would not have, in reality, been allowed to face such a choice. Rather, because the original indictment was dismissed only pursuant to the plea negotiations, had the plea been withdrawn, the superseding information would likewise have been dismissed and the 105-count indictment reinstated. In such a situation, Peck would have faced trial on not one felony and three misdemeanors, but on 102 felonies and three misdemeanors.
 
 
 14
 The defendant also intimates that he wishes to proceed to trial on the misdemeanor counts because he believes he now has a legitimate defense to those charges. As noted by the district court in its memorandum opinion denying the motion to withdraw, even if the court were to dismiss the misdemeanor counts of the superseding information, Peck's predicament would not be altered because the shorter, misdemeanor sentences were ordered to run concurrently with the longer sentence for the felony of preparing false tax returns.
 
 
 15
 Our examination of the factors listed in Spencer for determining whether a "fair and just" reason exists for withdrawal of a guilty plea leads us to the conclusion that the district court did not abuse its discretion in denying the request for withdrawal.
 
 
 16
 The defendant next insists that the district court should have forced the prosecution to recommend a sentence at the lower end of the applicable guideline range, as provided in the plea agreement. Peck maintains that the government's refusal to comply with the agreement solely because of the defendant's failure to tender the promised $5,000 restitution payment at the time of sentencing is improper, because the tax debt to the Internal Revenue Service was discharged in a previous bankruptcy proceeding.
 
 
 17
 Clearly, "when the government makes promises to a defendant who relies on those promises and pleads guilty, the government must carry out its representations." United States v. Streebing, 987 F.2d 368, 372 (6th Cir.), cert. denied, 113 S.Ct. 2933 (1993), citing Santobello v. New York, 404 U.S. 257 (1971). The situation presented in this case is, however, different from that usually found in attempts by defendants to enforce plea agreements. In this matter, the defendant himself first breached the agreement by failing to make a promised downpayment on back taxes owed the government. Furthermore, tax delinquencies such as the one owed by Peck are nondischargeable. See 11 U.S.C. Sec. 523(a)(1).
 
 
 18
 Moreover, the district court clearly stated that its decision to sentence the defendant near the higher end of the applicable guideline range was not motivated by Peck's failure to pay the $5,000. In addressing the appropriate sentence to be imposed upon the defendant, the district court explained:
 
 
 19
 In any event, I've had a chance to look at this, and quite frankly, the fact of the nonpayment of the $5,000, although this is a breach of the plea agreement, is not really a factor. What is a factor is what I believe to be pretty serious, very serious violations, criminal violations here that are different from the run-of-the-mill, if you will, failure to file taxes or other kinds of Internal Revenue Service criminal violations that we see. This is activity on a much more systematic scope and conducted by someone who, Mr. Peck does it for a living and is supposed to be more knowledgeable and more ethical than other people who don't charge folks to prepare tax returns but may simply do it for themselves. So for that reason, I view the violations, take them very seriously and believe that they should be punished accordingly, irrespective of what the plea agreement is, quite frankly, and irrespective of whether the $5,000 happens to be here today or not. (Emphasis added.)
 
 
 20
 The plea agreement entered into by the government and the defendant specifically recognized that any recommendation made by the government was not binding on the court and that the district court could determine the proper sentence to be imposed upon Peck within the applicable sentencing range. We conclude that the sentence imposed upon the defendant was within that range and is, therefore, proper.
 
 
 21
 In his brief on appeal, Peck does allege that the district court accepted his initial tender of a $200 special assessment pursuant to 18 U.S.C. Sec. 3013 and did not refund the excess payment when the special assessment was properly reduced to $125. Because the defendant is clearly entitled to a refund of any such overpayment, this matter should be remanded to the district court for whatever action is appropriate and necessary to ensure that such excess funds are returned to Peck.
 
 
 22
 For the reasons stated above, we AFFIRM the judgment of the district court and REMAND the case to the trial court for a refund of any excess special-assessment payment made by the defendant.
 
 
 
 [1]
 The government's brief contends that Peck was, in fact, subject to $550,000 in fines. The applicable statutory sections under which the defendant was charged, however, provide only for fines of $100,000, 26 U.S.C. Sec. 7206(2), and $25,000, 26 U.S.C. Sec. 7203. Thus, because Peck entered guilty pleas to three counts of violating Sec. 7203, the applicable combined maximum fine was $175,000. Because no fine was imposed in this matter, any discrepancy in this regard is irrelevant
 
 
 [2]
 The guidelines provide a sentencing range of 18-24 months for a defendant sentenced at offense level 15, criminal history category I