**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

    v.

RONALD BRUCE ADAMS,
       *Defendant-Appellant.*

No. 04-30339

D.C. No.
CR-02-00021-CCL

OPINION

Appeal from the United States District Court
for the District of Montana
Charles C. Lovell, District Judge, Presiding

Argued and Submitted
September 14, 2005—Seattle, Washington

Filed January 3, 2006

Before: Arthur L. Alarcón, Alex Kozinski, and
Andrew J. Kleinfeld, Circuit Judges.

Opinion by Judge Alarcón;
Dissent by Judge Kleinfeld

**COUNSEL**

Robert S. Mahler and Raymond J. Dearie, Jr., Bullivant Houser Bailey PC, Seattle, Washington; Daniel Donovan, Thompson Potts & Donovan PC, Great Falls, Montana, for the defendant-appellant.

William W. Mercer, United States Attorney, and Bernard F. Hubley, Assistant United States Attorney, Helena, Montana, for the plaintiff-appellee.

**OPINION**

ALARCÓN, Circuit Judge:

Ronald Adams appeals from the district court's order sentencing him to five years in prison and fining him $400,000. He contends that his guilty plea was not knowing, voluntary and intelligent, that the district court improperly failed to give

him a sentence reduction under the Safety Valve, and that his sentence violated *United States v. Booker*, 125 S. Ct. 738 (2005). We vacate Mr. Adams's guilty plea and conviction because we conclude that it was not knowing, voluntary and intelligent in light of the district court's failure to inform him that he was subject to a mandatory fine under the Sentencing Guidelines. Accordingly, we do not consider the additional issues raised by Mr. Adams.

# I

On September 2, 2003, Montana state officials found 200 marijuana plants on Mr. Adams's property. Mr. Adams entered into a plea agreement with the Government, in which he admitted planting the garden. In the plea agreement, the Government agreed to recommend to the district court that no fine be imposed as part of his sentence. The Presentence Report ("PSR") found that, pursuant to the United States Sentencing Guidelines Manual (U.S.S.G.) § 5E1.2(c)(3) and (4),[1]

---

[1]U.S.S.G. § 5E1.2(c) reads as follows:

(1)   The minimum of the fine guideline range is the amount shown in column A of the table below.

(2)   Except as specified in (4) below, the maximum of the fine guideline range is the amount shown in column B of the table below.

(3)   Fine Table:

| Offense Level | A Minimum | B Maximum |
| --- | --- | --- |
| 3 and below | $    100 | $    5,000 |
| 4-5 | $    250 | $    5,000 |
| 6-7 | $    500 | $    5,000 |
| 8-9 | $  1,000 | $  10,000 |
| 10-11 | $  2,000 | $  20,000 |
| 12-13 | $  3,000 | $  30,000 |
| 14-15 | $  4,000 | $  40,000 |
| 16-17 | $  5,000 | $  50,000 |
| 18-19 | $  6,000 | $  60,000 |

the applicable fines ranged from $4,000 to $2,000,000 for each of the two charged offenses, and that Mr. Adams had $7,408,034 in assets.

The district court imposed a fine of $200,000 for each of the two offenses, for a total of $400,000.

## II

Mr. Adams asserts that his sole motivation for pleading guilty was the agreement he had with the Government that it would ask the district court not to impose a fine. He alleges that, had the judge informed him that he was subject to a mandatory minimum fine, he would not have pled guilty.

Because Mr. Adams did not object below to the failure of the district court to comply with Rule 11(b)(1)(I) and Rule 11(b)(1)(M) of the Federal Rules of Criminal Procedure, we review for plain error. *See United States v. Vonn*, 535 U.S. 55, 59 (2002). "Plain error is: (1) error; (2) that was plain; and (3) affected substantial rights." *United States v. Benitez-Perez*, 367 F.3d 1200, 1205 (9th Cir. 2004) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). "If the error satisfies these criteria, we are still not required to reverse unless the error 'seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* (quoting *United States v. Alli*, 344 F.3d 1002, 1007 (9th Cir. 2003)).

| | | |
|---|---|---|
| 20-22 | $ 7,500 | $ 75,000 |
| 23-25 | $10,000 | $100,000 |
| 26-28 | $12,500 | $125,000 |
| 29-31 | $15,000 | $150,000 |
| 32-34 | $17,500 | $175,000 |
| 35-37 | $20,000 | $200,000 |
| 38 and above | $25,000 | $250,000. |

(4)  Subsection (c)(2), limiting the maximum fine, does not apply if the defendant is convicted under a statute authorizing (A) a maximum fine greater than $250,000, or (B) a fine for each day of violation. In such cases, the court may impose a fine up to the maximum authorized by the statute.

**[1]** Rule 11(b)(1)(I) provides that during the plea colloquy, "the court must inform the defendant of, and determine that the defendant understands . . . any mandatory minimum penalty." Section 5E1.2(a) of the Sentencing Guidelines provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." Mr. Adams contends that under Rule 11(b)(1)(I), the district court was required to inform him that a fine was mandatory, but failed to do so.

Prior to accepting his guilty plea, the district court advised Mr. Adams as follows:

> Now as to the penalties. I believe your plea agreement acknowledges your understanding of the minimum penalty here being a term of imprisonment for five years on each of the two counts and the maximum penalty of 40 years as to each particular crime, as well as a fine of not to exceed $2 million or both imprisonment and fine and additionally a term of supervised released or at least not more than five years supervised release as to each count.

The district court did not inform Mr. Adams that, in addition to a minimum term of imprisonment for five years, the district court was required to impose a mandatory fine pursuant to U.S.S.G. § 5E1.2(a).

**[2]** The Government contends that the district court did not err in failing to inform Mr. Adams that he faced a mandatory minimum fine because the imposition of a fine is not mandatory under the Sentencing Guidelines. In support of this argument, the Government points to the exception in U.S.S.G. § 5E1.2(a): "The court *shall* impose a fine in all cases, *except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine*." (Emphasis added.) The Government asserts that this exception makes the imposition of the fine discretionary. Therefore, it argues, the

district court was not required to inform Mr. Adams that he would be subject to a fine. The Government has not cited any authority to support its interpretation of § 5E1.2(a). We are persuaded that the plain meaning of § 5E1.2(a) is that, if a defendant has the means to pay the fine, the imposition of a fine is mandatory. *See, e.g., Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("Congress' use of the permissive 'may' . . . contrasts with the legislators' use of a mandatory 'shall' in the very same section. Elsewhere in [the section], Congress used 'shall' to impose discretionless obligations . . . ."); *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("The Panel's instruction comes in terms of the mandatory 'shall,' which normally creates an obligation impervious to judicial discretion.").

The Government contends further that there was no error in this case because Mr. Adams was put on notice of the *maximum* fine he could face. This argument misses the point. Mr. Adams argues that the district court violated Rule 11(b)(1)(I) by failing to advise him that, as a direct consequence of a guilty plea, he would be subject to a mandatory *minimum* fine. We agree. Mr. Adams entered a guilty plea after the Government promised to ask the district court not to impose any fine. We infer from the plea agreement that both parties believed the district court had the discretion not to impose a fine.

We previously held in *United States v. Maree*, 934 F.2d 196 (9th Cir. 1991) that

> Rule 11(c)(1) requires the sentencing court to "inform the defendant of . . . the mandatory minimum penalty provided by law." The Rule does not, however, require the court to discuss the minimum *guideline* sentence. In a practical sense, it would be impossible for a court to inform a defendant of the minimum sentence available under the Guidelines. The presentence report, which is not prepared prior

>    to the entrance of a guilty plea, is essential to the
>    court's formulation of the relevant sentence factors.

*Id.* at 200 (alteration in original).

Here, the Sentencing Guidelines provided that Mr. Adams would be subject to a mandatory fine regardless of the offense level that would be calculated in the PSR. *See* n.1 *supra* (quoting "Fine Table" from U.S.S.G. § 5E1.2(c)(3)). Thus, even if the district court did not know at the time of the plea colloquy the precise amount of the fine that would be applicable, it was required to inform Mr. Adams that a mandatory fine would be imposed.

In any event, the change of plea hearing in *Maree* occurred in 1988, prior to the amendment of Rule 11 on December 1, 1989. Rule 11(b)(1)(M) provides that a district court must inform the defendant of "the court's obligation to apply the Sentencing Guidelines." We held in *Maree* that because "[t]he 1988 version of Rule 11[ ] did *not* require the district court to discuss the guidelines . . . the district court did not err" in failing to advise him of the applicability of the Sentencing Guidelines. 934 F.2d at 200. We noted in *Maree* that "[t]he current form of R11[ ] does indeed require that the district court inform a defendant entering a plea of the sentencing guidelines' applicability." *Id.* Thus, the holding in *Maree* is not controlling, nor is it the law of this circuit regarding guilty pleas entered *after* the amendment to Rule 11 requiring a court to explain its obligation to apply the Sentencing Guidelines.[2]

---

[2]The string of cases cited in footnote 21 of the dissent does not support the notion that the holding in this case is contrary to the law of this circuit and the view of nine other circuits.

It is quite true that at the time of the publication of this court's decision in *Maree*, the Eighth Circuit's decision in *United States v. Thomas*, 894 F.2d 996 (8th Cir. 1990) (per curiam), and the Tenth Circuit's decision in *United States v. Rhodes*, 913 F.2d 839 (10th Cir. 1990), a district court

**[3]** More recently, in *United States v. Littlejohn*, 224 F.3d 960 (9th Cir. 2000), we held that "district courts in this circuit still must inform defendants pleading guilty of the direct consequences of their plea and resulting conviction, *in addition to the warnings* required by the explicit language of Rule 11[ ]." *Id.* at 965 (emphasis added). We have described a direct consequence of a guilty plea as a result that "represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Torrey v. Estelle*, 842 F.2d 234, 236 (9th Cir. 1988) (quotation and citation omitted). We concluded in *Littlejohn* that the district court erred when it failed to advise the defendant that pleading guilty would render him ineligible for social security assistance and food stamp benefits, notwithstanding the fact that that consequence was not set forth in Rule 11. *Littlejohn*, 224 F.3d at 969.

**[4]** A direct consequence of Mr. Adams's guilty plea was the imposition of a mandatory fine under § 5E1.2(a), unless he established at the sentencing hearing that he was unable to

---

was not required to discuss with the defendant the applicability of the Sentencing Guidelines prior to accepting a guilty plea. In each of these cases, the plea colloquy took place *prior* to December 1, 1989, *before* Rule 11 was amended to provide that a district court *must* inform a defendant of its "obligation to apply the Sentencing Guidelines." Thus, *Maree* is no longer the law of the circuit except as to guilty pleas entered *prior* to December 1, 1989. Furthermore, the out-of-circuit cases cited in the dissent have no precedential or persuasive value in determining a district court's duty under Rule 11(b)(1)(M). None of the cases cited in the dissent discusses the question whether the failure of a district court to fulfill its obligation under Rule 11(b)(1)(M) to inform the defendant that the Sentencing Guidelines provide for a mandatory fine under certain circumstances renders a guilty plea involuntary.

We do not hold that, prior to accepting a guilty plea, a judge must inform a defendant of the precise minimum fine that will be imposed. Instead, we conclude that Rule 11 requires a district court to advise a defendant that he shall face a mandatory fine if he or she has the ability to pay it. Obviously, the amount of the fine and the defendant's ability to pay it will depend upon the facts set forth in the presentence report.

pay it. Thus, under *Littlejohn*, as well as Rule 11, the district court erred in failing to advise Mr. Adams that he faced the imposition of a mandatory fine unless he persuaded the court that he was unable to pay it.

**[5]** The Supreme Court has instructed that a guilty plea is voluntary only if the defendant is fully aware of the direct consequences of his or her plea. *See Brady v. United States*, 397 U.S. 742, 755 (1970). It has also held that the plea colloquy is designed "to protect the defendant from an unintelligent or involuntary plea." *Mitchell v. United States*, 526 U.S. 314, 322 (1999). Mr. Adams has demonstrated that he was not fully aware of the direct consequences of his plea because he was not informed by the district court that he would be subject to a mandatory fine. Mr. Adams bargained for, and obtained, a promise from the Government to recommend that no fine be imposed, and he insists he would not have pleaded guilty had he known that the court could not adopt such a recommendation. The plea agreement led him to believe that the district court had the discretion to adopt the Government's recommendation that a fine not be imposed.

**[6]** We therefore hold the court's error was plain and affected Mr. Adams's substantial right to enter a knowing, voluntary and intelligent plea. To accept a guilty plea under such circumstances affects the fairness, integrity, and public reputation of judicial proceedings because "we cannot know whether [the defendant] would have pleaded differently if he had been properly informed." *United States v. Smith*, 60 F.3d 595, 600 (9th Cir. 1995).[3]

---

[3]The dissent correctly notes that Mr. Adams's wealth makes him an "exception rather than the rule," and that, for most criminal defendants, "the judge would find that the defendant could not pay the fine." Dissent at 15. It is precisely Mr. Adams's wealth (and hence his ability to pay), together with the terms of his plea agreement, that make this the rare case in which the district court's failure to inform him of the mandatory fine cannot be deemed harmless. *See* Fed. R. Crim. P. 11(h).

We VACATE the plea and conviction, and REMAND for further proceedings.

---

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent.

The majority decides this case contrary to binding circuit authority, and contrary to the views of all *nine* other circuits that have spoken to the question. Fortunately, the practical significance of the majority's holding should gradually dissipate as pre-*Booker*[1] sentences complete their passage through appellate and post-conviction review. Unfortunately, there are plenty of pre-*Booker* sentences left to go.

The district judge's duty to advise a defendant of "any mandatory minimum penalty"[2] has always been understood to mean statutory mandatory minimums, not guideline "mandatory" minimums. What everyone (judges, prosecutors, defense attorneys) interpreting criminal law knew, until today's opinion, was that "mandatory minimums" meant such penalties as the five-year, statutory mandatory minimum sentence—with no possibility of probation, parole, or of serving it concurrently with any other term—for using a gun during a crime of violence or a drug trafficking crime.[3] There is no discretion, no exception, and no flexibility to depart from this sort of statutory, mandatory minimum.

There is now no such thing as a "mandatory minimum" sentence imposed by the guidelines because, under *Booker*, the guidelines are merely advisory. But even before *Booker*, there was no such thing; the guidelines always allowed for

---

[1] *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005).
[2] Fed. R. Crim P. 11(b)(1)(I).
[3] 18 U.S.C. § 924(c)(1).

departures and Rule 11 provided for plea agreements binding the court to a guideline determination.[4] As for the minimum fine provisions central to this case, they were never mandatory by their own terms because they were conditional on the court's determination of the defendant's ability to pay.[5]

Rule 11, upon which the majority relies, plainly distinguishes between the subsection (I) duty to advise of mandatory minimum sentences and the quite distinct subsection (M) duty to advise the defendant of "the court's obligation to apply the Sentencing Guidelines, and the court's discretion to depart from those guidelines under some circumstances."[6] Post-*Booker*, that advice will be even more distinct from subsection (I) mandatory minimum advice than it used to be. The addition of subsection (M) at a time when subsection (I) was already there shows that the rule was never meant to apply subsection (I) to the guidelines. When subsection (M) was added by amendments in 1989, the Advisory Committee Notes explained that the purpose was to assure that the defendant knew of "the existence of the guidelines," even though "it would be impractical, if not impossible, to know which guidelines will be relevant prior to the formulation of a pre-sentence report."[7] As for the subsection (I) duty to advise the defendant of mandatory minimum sentences, the Advisory Committee Notes explained that the statutory mandatory minimum, unlike other consequences of the plea of which it was *not* necessary to advise the defendant, "is usually readily ascertainable from the face of the statute defining the crime, and thus it is feasible for the judge to know specifically what to tell the defendant."[8]

---

[4]Fed. R. Crim. P. 11(c)(1)(C).

[5]U.S.S.G. § 5E1.2 (e), (f).

[6]Fed. R. Crim. P. 11(b)(1)(M).

[7]Fed. R. Crim. P. 11 (Advisory Committee Note: 1989 Amendments).

[8]Fed. R. Crim. P. 11 (Advisory Committee Note: 1974 Amendments).

In this case, it would have been likewise impossible for the district judge to know that there would really be a "mandatory" fine when he accepted Adams's guilty plea.[9] Most criminals are not multi-millionaires like Adams. It is therefore likely the exception rather than the rule that the fine specified by the guidelines was imposed—even pre-*Booker*—because the judge would find that the defendant could not pay the fine. Perhaps Adams could have anticipated that the district judge would have imposed a fine because Adams knew his own wealth, but the judge accepting the plea could not have known and likely would not have imagined that he was sentencing a man worth more than $7 million. District judges do not get a lot of defendants who can actually pay six figure fines. The presentence report, which in this case showed that the defendant was a multi-millionaire, is not prepared until after the judge takes the plea.[10]

Careful trial judges in all courts generally use scripts that they or judicial service agencies have prepared to assure that they do not leave out anything they are required to say. This is especially true in what are, for the district judges, routine and high volume proceedings in which one can easily forget some detail. Federal district judges have the advantage of particularly good scripts, prepared by the Federal Judicial Center. The Federal Judicial Center script for taking pleas, used in innumerable Ninth Circuit pleas with such modifications as our case law has required, draws the same distinction with reference to statutory mandatory minimums involving firearms and drugs:

---

[9]Adams does not raise as an issue on appeal any failure by the government to make recommendations as promised. He acknowledged in his plea agreement that the court would not be bound by government regulations. The court could have departed from the guidelines and accepted the government's recommendation if there was an appropriate justification for doing so.

[10]*United States v. Sanders*, 41 F.3d 480, 487 (9th Cir. 1994) ("[T]he presentence report is not prepared until after the defendant pleads guilty.").

(b) Determine whether defendant faces a mandatory minimum sentence or an increase in the statutory maximum sentence because of one or more prior firearms offenses, violent felonies, or drug offenses. If this is not known at the time of the plea, advise defendant of the *possible* maximum sentence.

Regarding the sentencing guidelines, the script takes the only practical approach, "I don't know, it's unpredictable. Talk to your lawyer.":

L. Ask defendant:

1. Have you and your attorney talked about how the sentencing guidelines might apply to your case? [*Note: If there is a plea agreement that a specific sentence will be imposed* (Fed. R. Crim. P. 11(e)(1)(C)), skip to question 4.].

2. Do you understand that the court will not be able to determine the guideline sentence for your case until after the presentence report has been completed and you and the government have had an opportunity to challenge the reported facts and the application of the guidelines recommended by the probation officer, and that the sentence imposed may be different from any estimate your attorney may have given you?

3. Do you also understand that, after your guideline range has been determined, the court has the authority in some circumstances to depart from the guidelines and impose a sentence that is more severe or less severe than the sentence called for by the guidelines?

As the majority notes, we held in *United States v. Maree*[11] that Rule 11

---

[11]*United States v. Maree*, 934 F.3d 196, 200 (9th Cir. 1991).

requires the sentencing court to 'inform the defendant of . . . the mandatory minimum penalty provided by law.' The Rule does not, however, require the court to discuss the minimum *guideline* sentence. In a practical sense, it would be impossible for a court to inform a defendant of the minimum sentence available under the Guidelines. The presentence report, which is not prepared prior to the entrance of a guilty plea, is essential to the court's formulation of the relevant sentence factors.

The majority leaves out the next sentence from *Maree*, which expressly answers the question before us: "Rule 11 only requires the mention of a *minimum sentence*, not the minimum *guideline* sentence."[12] Today we hold the opposite. This failure to follow our own precedent is impermissible without rehearing en banc.

The majority tries to avoid *Maree* — going the "wrong" way from its point of view — by suggesting that *Maree* is no longer good law because Rule 11 was amended to add subsection (M). That argument is mistaken, and we must follow *Maree* as binding circuit authority. Subsection (I) says to tell the defendant of "any mandatory minimum penalty,"[13] but subsection (M) says to tell the defendant of "the court's obligation to apply the Sentencing Guidelines, and the court's discretion to depart."[14] The language is clear enough in distinguishing that the defendant must be told (1) what the statutory, mandatory minimums are, and (2) that the guidelines exist and must be applied subject to the court's discretion to depart. The Advisory Committee Notes make it even more explicit that mandatory minimums "readily ascertainable from the face of the statute defining the crime,"[15] but that

---

[12]*Id.* at 200. (emphasis in original).

[13]Fed. R. Crim. P. 11(b)(1)(I).

[14]Fed. R. Crim. P. 11(b)(1)(M).

[15]Fed. R. Crim. P. 11 (Advisory Committee Note: 1974 Amendments).

the court need not tell the defendant "which guidelines will be important."[16] That is about as plain as these things get: by adding subsection (M), the Rule did not add a duty to advise what guideline minimums would apply because, as the Advisory Committee Notes explain, that would be "impracticable, if not impossible."

And that is what *Maree* says, the controlling Ninth Circuit case the majority prefers not to follow. *Maree* disposed of two Rule 11 issues. First, the court had not told the defendant that it was obligated to follow the guidelines, subject to discretionary departures.[17] On that issue, the addition of Rule 11(b)(1)(M) controlled, and that confuses the majority's reading. *Maree* held that the judge was not then required to advise the defendant that the guidelines were controlling because subsection (M) had not yet gone into effect.[18] Second, Maree complained that the judge had not told him what minimum sentence the guidelines required. *Maree* does not tie its analysis of this second argument to subsection (M) at all, though today's majority is confused on this point. *Maree* quotes the requirement in (I)—binding then and now—to advise the defendant of any "mandatory minimum penalty," and holds that (I) "only requires the mention of a *minimum sentence*, not

---

[16]Fed. R. Crim. P. 11 (Advisory Committee Note: 1989 Amendments) ("This requirement assures that the existence of guidelines will be known to a defendant before a plea of guilty or nolo contendere is accepted. Since it will be impracticable, if not impossible, to know which guidelines will be relevant prior to the formulation of a presentence report and resolution of disputed facts, the amendment does not require the court to specify which guidelines will be important . . . By giving the advice, the court places the defendant and defense counsel on notice of the importance that guidelines may play in sentencing and of the possibility of a departure from those guidelines. A defendant represented by competent counsel will be in a position to enter an intelligent plea.").

[17]*Maree*, 934 F.2d at 200 ("Maree first contends that the district court was required to advise him that it was obligated to consider the applicable sentencing guidelines.").

[18]*Id.*

the minimum *guideline* sentence."[19] In what has turned out to be a vain hope of avoiding confusion, *Maree* stressed the distinction between minimum sentences and minimum *guideline* sentences, holding that the "minimum sentence referred to in the rule refers to the statutory minimum."[20]

Evidently, only today's majority is confused about the significance of adding subsection (M). The nine other circuits that have ruled on this issue unanimously hold that the subsection (I) requirement that the judge tell the defendant of any mandatory minimum means only *statutory* mandatory minimums, not *guideline* mandatory minimums.[21] And these nine

---

[19]*Id*. at 200 (emphasis in original).

[20]*Id*.

[21]*See*, e.g., *United States v. Watley*, 987 F.2d 841, 846 (D.C. Cir. 1993) (Noting that Rule 11 refers to "statutory prescriptions"); *see also United States v. Mosley*, 173 F.3d 1318, 1327 & n.11 (11th Cir. 1999); *United States v. Rhodes*, 913 F.2d 839, 843-44 (10th Cir. 1990) ("Rule 11 is satisfied when a court informs the defendant of the maximum and minimum statutory sentences."); *United States v. Thomas*, 894 F.2d 996, 996 (8th Cir. 1990) ("The District Court complied with the requirements of Rule 11(c)(1) by advising Thomas of the maximum statutory penalty for his offenses."); *U.S. v. Blalock*, 321 F.3d 686, 689 (7th Cir. 2003) ("Rule 11 only requires that the court inform the defendant of the maximum and minimum penalties authorized under the applicable statute, as well as the fact that the particular sentence imposed will be determined by reference to the federal sentencing guidelines"); *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990) (Explaining that Rule 11's "notice of mandatory minimum and maximum sentences has been construed to apply to statutory sentencing ranges, and not to guideline adjustments."); *United States v. DeFusco*, 949 F.2d 114, 118 (4th Cir. 1991) ("The guideline range does not set a mandatory minimum penalty for an offense within the meaning of Rule 11."); *United States v. Henry*, 893 F.2d 46, 47 (3rd Cir. 1990) (Explaining that Rule 11 "is concerned with statutory minimum and maximum penalties and not with guidelines ranges."); *United States v. Fernandez*, 877 F.2d 1138, 1143 (2nd Cir. 1989) ("it was enough that the district court herein informed appellant of the minimum and maximum sentences which he faced—Rule 11 required no more. The statutory minimum and maximum sentences for the offense of conviction mark the boundaries within which the Guidelines sentence must fall.").

other circuits have so ruled before and after the addition of subsection (M), the intervening event the majority uses to upend *Maree*. They run from 1989 to 2003, a solid phalanx of authority agreeing with what we held in *Maree*, which binds us today. In *United States v. Littlejohn*[22]—subsequent to the addition of (M) to Rule 11—we ourselves cited *Maree* for the proposition that the "district court need not advise defendant of a minimum sentence required under the guidelines."[23]

The majority tries to distinguish *Maree* by implying that the court here knew that Adams would be subject to a mandatory minimum fine, but that is incorrect. As explained above, the fine was not mandatory and the court could not have known of Adams's net worth until the pre-sentence report computed it. There is simply no way to escape *Maree*'s holding that the "minimum sentence referred to in the rule refers to the statutory minimum."[24] The majority's reliance on *Littlejohn* is also unavailing: that case involved failure to warn a defendant of the *statutory* consequences of a guilty plea, not guideline penalties.[25]

Let us hypothesize that a normal, intelligent, scholarly, careful district judge trying to follow the law is called upon to decide whether he had to advise the defendant in the Rule 11 colloquy of a minimum prescribed by the sentencing guidelines. Let us further hypothesize that the judge thought he might be able to figure out some way to calculate the defendant's criminal history level and guidelines adjustments at the time of the plea. Gathering our authorities, the judge would read in *Maree* that "Rule 11 only requires the mention

---

[22]*United States v. Littlejohn*, 224 F.3d 960, 967-68 (9th Cir. 2000).

[23]*Id.* at 967.

[24]*Maree*, 934 F.2d at 200.

[25]*See Littlejohn*, 224 F.3d at 966 ("The direct/collateral analysis in Littlejohn's case must focus on two separate statutory provisions: 21 U.S.C. § 862(a) . . . and 21 U.S.C. § 862a.").

of a *minimum sentence*, not the minimum *guideline* sentence."[26] Then the judge would read in *Littlejohn* that *Maree* held that the "district court need not advise defendant of a minimum sentence under the guidelines."[27] If the judge had any question about whether the law was settled, he might read the opinions of other circuits and learn that all nine that had spoken had at all times come to the same conclusion. Asked "Does Rule 11 require a judge to advise a defendant of a minimum guideline sentence?" our hypothetical perfect judge would say "no, unequivocally no. That is too easy a question to ask seriously in the face of all this authority." That sensible judge, seasoned by the prudence that accompanies experience, would think, "if I tell the defendant what I think the guidelines range is for his sentence, then I risk reversal because some of what affects that range is likely to be a surprise we *all* learn from the pre-sentence report."[28] Given our previous, clear authority on this subject, today's holding to the contrary will be quite a surprise.

Nor can I share the majority's insouciance in the face of the nine opinions of our sister circuits expressly rejecting the majority's position. As outlined in footnote 21, *infra*, each of these circuits has concluded that Rule 11 is concerned solely with *statutory* minimum penalties, not minimums imposed by the sentencing guidelines. For example, the Eleventh Circuit, quoting our decision in *Maree*, held "[w]e agree with the Ninth Circuit's reasoning . . . . 'Rule 11 only requires the mention of a minimum sentence, not the minimum guideline

---

[26]*Maree*, 934 F.2d at 200 (emphasis in original).

[27]*Littlejohn*, 224 F.3d at 967.

[28]*See*, e.g., *Watley*, 987 F.2d at 842, 847 (Court's incorrect estimate that it "could, and likely would set [defendant's] sentence" at one range when the guidelines required another sufficient to withdraw guilty plea); *see also United States v. DeFusco*, 949 F.2d 114, 118 (4th Cir. 1991) (quoting *United States v. Henry*, 893 F.2d 46, 48-49 (3rd Cir. 1990)) ("[A]ny estimate of the guideline range that the district court would give in advance of the pre-sentence report might well turn out to be misleading and could be the basis for a contention that the guilty plea should be invalidated.").

sentence. The minimum sentence referred to in the rule refers to the statutory minimum.' "[29] When Justice Ginsburg was on the D.C. Circuit, she authored an opinion coming to the same conclusion. She explained that "the *statutory* prescriptions . . . are the ones to which Rule 11[ ] points in referring to 'the mandatory minimum penalty provided by law."[30] The guilty plea was reversed on other grounds,[31] but the majority was clear that it was joining the "uniformly held" views of the other circuits.[32] The Seventh Circuit has also recently rejected the majority's position in clear and unmistakable terms, explaining that "Rule 11 only requires that the court inform the defendant of the maximum and minimum penalties authorized under the applicable statute."[33]

Despite *nine* of our sister circuits having agreed with us, we have now disagreed with ourselves.

---

[29]*United States v. Mosley*, 173 F.3d 1318, 1327 n.11 (11th Cir. 1999) (quoting *Maree*, 934 F.2d at 200).

[30]*United States v. Watley*, 987 F.2d at 846.

[31]*Id*. at 847 (Explaining that the reversal "did not stem from a failure to adhere to Rule 11[ ]'s penalty notice instruction.").

[32]*Id*. at 846.

[33]*United States v. Blalock*, 321 F.3d 686, 689 (7th Cir. 2003).